309 Ga. 110
FINAL COPY

S20A0134.  MATHIS v. THE STATE.

BETHEL, Justice.

Nathaniel Mathis was found guilty of malice murder and other crimes in connection with the shooting death of Rodney Benton.[1] Mathis appeals, challenging the sufficiency of the evidence as to each offense of which he was convicted, and contending that he

---

[1] The crimes occurred on June 11, 2016. On September 6, 2016, Mathis was indicted by a Fulton County grand jury for: malice murder; three counts of felony murder; aggravated assault; criminal damage to property in the first degree; possession of a firearm during the commission of a felony; and possession of a firearm by a first offender probationer.  At a trial held from May 1 to 4, 2017, the jury found Mathis guilty of all counts.  The trial court originally sentenced Mathis to life in prison for malice murder, ten years concurrent for criminal damage to property, five years consecutive for possession of a firearm during commission of a felony, and five years consecutive for possession of a firearm by a first offender probationer. The three felony murder counts were vacated by operation of law, and the aggravated assault count was merged into the malice murder for sentencing purposes.  On May 11, 2017, Mathis filed a motion for new trial, and he later amended it twice through new counsel.  After a hearing, the trial court denied the motion for new trial as amended on January 28, 2019, except for the claim that the evidence was insufficient to support the conviction for criminal damage to property. The trial court vacated that conviction for that reason and amended the judgment that same day.  Mathis filed a notice of appeal on February 21, 2019.  The case was docketed to this Court's term beginning in December 2019 and was submitted for a decision on the briefs.

received ineffective assistance of trial counsel because counsel (1) did not file a pretrial motion for immunity from prosecution under OCGA § 16-3-24.2 and (2) did not call Mathis' nephew and mother as witnesses at an immunity motion hearing and at trial. For the reasons stated below, we affirm.

The trial evidence, viewed in the light most favorable to the verdicts, showed the following. In June 2016, Mathis lived with his sister, Melanie Palmer; his mother, Laverne Williams; his nephew, Christopher Snipes; Palmer's sister; and Palmer's boyfriend, Rodney Benton, in Fulton County. Mathis sometimes allowed his sister, Palmer, to use his EBT card to buy groceries for the family. On June 11, Palmer tried to use the EBT card at a grocery store, but the card did not work because Mathis had changed the code without telling Palmer. When Palmer called Mathis, he yelled that he needed his card and demanded that she "[b]ring my sh**."

Palmer returned home with Benton, parked her car by the porch, and went inside the family home. Palmer tried to give the EBT card to Mathis, but he would not take it. Palmer then threw

the card on the floor and cursed at Mathis. Mathis did not respond, but instead walked past Palmer and went outside onto the porch. Benton was sitting in Palmer's car with the window rolled halfway down. Mathis walked toward Benton and said something to him (Palmer did not hear what was said), to which Benton responded, "I don't have anything to do with what you got going on, bro." Mathis stepped back and shot at Benton with a handgun. A neighbor who witnessed the shooting testified that she did not see Benton do anything other than start rolling up the window when Mathis began shooting. Benton suffered eight gunshot wounds to his torso and died of the wounds.

Mathis then walked back into the house and came outside with an AK-style rifle. Mathis' nephew, Snipes, tried to take the rifle away from Mathis, and the two wrestled over it. Still armed with his handgun, Mathis then fled to a nearby park. While at the park, Mathis waved down a driver passing by and asked her to call his family and tell Palmer he was sorry and that he was "going to end it all." Mathis also told the driver that he was not stable mentally and

that he had "just snapped." The driver called and spoke with Palmer.

Police arrived at the park, and during an ensuing SWAT standoff, police negotiators overheard Mathis say that he had "killed someone over some dumb sh**" or "something stupid." Mathis also said that he "just had to show the motherf****r that he wasn't bullsh***ing." When Mathis was apprehended, police recovered a handgun, a drum magazine, and several .40-caliber bullets.

At the crime scene, investigators collected bullet casings that were consistent with a .40-caliber handgun. A gunshot residue kit performed on Mathis' hands also found gunshot residue particles. Mathis was taken to Grady Hospital, where he spent two days before being taken to jail. From the jail, Mathis called a friend and told him that he had "f***ed up."

At trial, Mathis testified in his own defense as follows. He had conflicts with Palmer, stemming from when their grandmother died and left her house to them. On the day of the murder, he argued with Palmer about his EBT card, she became belligerent, and they

continued to argue outside on the porch when Benton got involved, though Benton did not leave his car. Benton threatened him and cursed at him, though Mathis could not remember what Benton said, and Mathis started shooting at Benton when Mathis thought Benton was reaching for a gun. A detective testified that no weapons were found in Palmer's car.

When Mathis got scared and pulled the gun on Benton, he "blanked out" and stood there in shock after firing the weapon. He went in the house and got a second gun from a hall closet. Mathis was later arrested in the park, but he did not know how he got to the park, and he spent two days on the mental health floor at Grady. However, he did remember asking a woman at the park to call Palmer.

1. Mathis argues that the evidence was insufficient to support his convictions. As to the three felony murder counts and the aggravated assault count, because Mathis was not convicted of or sentenced on any of these counts, see footnote 1 above, those claims are moot. See, e.g., *Mills v. State*, 287 Ga. 828, 830 (2) (700 SE2d

544) (2010). We thus limit our review of the sufficiency of the evidence to the convictions for malice murder, possession of a firearm during the commission of a felony, and possession of a firearm by a first offender probationer.

When evaluating the sufficiency of evidence, the proper standard of review is whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979). This Court views the evidence in the "light most favorable to the verdict, with deference to the jury's assessment of the weight and credibility of the evidence." (Citation and punctuation omitted.) *Hayes v. State*, 292 Ga. 506, 506 (739 SE2d 313) (2013). The jury's resolution of these issues "adversely to the defendant does not render the evidence insufficient." (Citation and punctuation omitted.) *Graham v. State*, 301 Ga. 675, 677 (1) (804 SE2d 113) (2017).

Mathis argues that the evidence was insufficient as to the malice murder count because, although multiple witnesses

confirmed that immediately prior to the shooting, Mathis and Palmer had a heated argument related to an EBT card, there was also a long-running feud over the property rights to their shared residence. Mathis argues that Benton repeatedly injected himself into the dispute over the property and, on the day of the shooting, into the argument between Mathis and Palmer. As a result, Mathis argues that he fired the fatal shots with a sudden, violent, and irresistible passion, and with the knowledge that Benton was known to carry a firearm and, therefore, using a firearm preemptively was necessary.

Where "conflicting evidence was presented regarding whether a defendant acted in self-defense in shooting the victim, the jury is free to reject the evidence in support of self-defense and to accept the evidence that the defendant did not act in self-defense." *McCray v. State*, 301 Ga. 241, 243 (1) (799 SE2d 206) (2017). Similarly, a rational jury is free "to reject the [defendant's] hypothetical version of events and to find the [defendant] guilty beyond a reasonable doubt of malice murder rather than voluntary manslaughter."

*McGuire v. State*, 307 Ga. 500, 504 (837 SE2d 339) (2019).

Here, there was evidence that, on the day of the shooting, after an argument between Mathis and Palmer over an EBT card, Mathis left the family home and approached Benton, who was sitting in a car outside with the window rolled down halfway. Mathis and Benton exchanged words. Mathis then stepped back from the car, shot at Benton with a handgun approximately eight times, and then returned to the house before emerging with an AK-style rifle. Snipes fought with Mathis over the rifle briefly before Mathis fled to a nearby park. While at the park, Mathis told a witness that he "was sorry" and had "just snapped." Police negotiators responding to the scene also heard Mathis state that he had "killed someone over some dumb sh**" or "something stupid," and that he "just had to show the motherf****r that he wasn't bullsh***ing." There were no weapons found in Palmer's car. The evidence presented at trial showed that Mathis was a first offender probationer.[2]

---

[2] Although the first offender disposition tendered at trial was different from the one alleged in the indictment, this does not constitute a fatal variance

Therefore, viewing the evidence in a light most favorable to the verdict and deferring to the jury's assessment of the weight and credibility of the evidence, we conclude that the evidence was sufficient to authorize a rational trier of fact to find Mathis guilty beyond a reasonable doubt of the crimes of malice murder, possession of a firearm during the commission of a felony, and possession of a firearm by a first offender probationer. *Jackson*, 443 U. S. at 319 (III) (B).

2. Mathis contends that he received ineffective assistance of trial counsel because counsel (1) did not file a pretrial motion for immunity from prosecution under OCGA § 16-3-24.2, and (2) did not call Mathis' nephew and mother as witnesses at an immunity motion hearing and at trial. We disagree.

"To prevail on a claim of ineffective assistance of counsel, a

---

requiring reversal. See *Roscoe v. State*, 288 Ga. 775, 776-777 (3) (707 SE2d 90) (2011) ("The indictment in this case sufficiently informed [the defendant] of the firearm possession charges against him and he has not shown that he was unable to present a viable defense to such charges or that he was surprised or misled at trial by the admission of his [prior] conviction to establish his status as a convicted felon.").

defendant generally must show that counsel's performance was deficient and that the deficient performance resulted in prejudice to the defendant." *Swanson v. State*, 306 Ga. 153, 155 (2) (829 SE2d 312) (2019) (citing *Strickland v. Washington*, 466 U. S. 668, 687-695 (III) (104 SCt 2052, 80 LE2d 674) (1984)). To satisfy the deficiency prong, a defendant must show that trial counsel "performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms." *Romer v. State*, 293 Ga. 339, 344 (3) (745 SE2d 637) (2013). This requires a defendant to "overcome the strong presumption that trial counsel's performance was adequate." (Citation and punctuation omitted.) *Swanson*, 306 Ga. at 155 (2). To satisfy the prejudice prong, a defendant must establish a reasonable probability that, in the absence of counsel's deficient performance, the result of the trial would have been different. See *Strickland*, 466 U. S. at 694 (III) (B). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

(a) Mathis first argues that his counsel performed deficiently

by not filing a pretrial motion for immunity from prosecution under

OCGA § 16-3-24.2.[3] We disagree.

OCGA § 16-3-24.2 provides:

> A person who uses threats or force in accordance with Code Section 16-3-21, 16-3-23, 16-3-23.1, or 16-3-24 shall be immune from criminal prosecution therefor unless in the use of deadly force, such person utilizes a weapon the carrying or possession of which is unlawful by such person under Part 2 of Article 4 of Chapter 11 of this title.

"To succeed on [a pretrial motion for immunity], counsel would have had to show by a preponderance of the evidence that [Mathis] acted in self-defense." *Velasco v. State*, 306 Ga. 888, 892 (3) (a) (834

---

[3] Mathis argues that under *Missouri v. Frye*, 566 U. S. 134, 149 (III) (132 SCt 1399, 182 LE2d 379) (2012), in pursuing plea negotiations, he was entitled to the same effective assistance of counsel as is required at trial. Mathis claims that because trial counsel's strategy was to secure a voluntary manslaughter conviction, counsel's failure to file a pretrial immunity motion as a strategy to push the State to offer a manslaughter plea was constitutionally ineffective. Mathis further argues that under *Blount v. State*, 303 Ga. 608, 613 (814 SE2d 372) (2018), requiring him to show that the result of a guilty plea would be better than the result of the trial, that the prosecution would have offered such a plea, and that the trial court would have accepted the plea makes a *Frye* challenge impractical, if not impossible. However, Mathis' argument is misplaced, as *Frye* involved a failure by trial counsel to convey a plea offer to the defendant. Here, there was no voluntary manslaughter plea offer to convey, as the State's only offer was a life term for murder. "To suggest that counsel should have obtained a [better] deal is pure speculation[,] which is insufficient to satisfy the prejudice prong of *Strickland*." *Sutton v. State*, 295 Ga. 350, 355 (6) (c) (759 SE2d 846) (2014).

SE2d 21) (2019). At Mathis' motion for new trial, his trial counsel testified that he did not believe an immunity motion would have been successful, as there was insufficient evidence of self-defense in this case. In its order denying Mathis' motion for new trial, the trial court likewise found that a pretrial immunity motion would have lacked merit; therefore, trial counsel was not ineffective for failing to make a meritless motion. See id. at 892 (3) (a). Because the evidence contradicting Mathis' claim of self-defense was overwhelming, as discussed in Division 1 above, we agree with those assessments.

Thus, because any motion for pretrial immunity would have been meritless, trial counsel was not deficient for failing to file such a motion. This claim of ineffective assistance therefore fails.

(b) Mathis next argues that his trial counsel performed deficiently by not calling Mathis' nephew and mother as witnesses at an immunity motion hearing, not calling Mathis' nephew at trial, and not eliciting certain testimony from Mathis' mother at trial. According to Mathis, his nephew and mother would have provided

testimony that supported a voluntary manslaughter theory, including that Benton was known to carry a firearm and that there were tensions between Benton and the men who lived at the residence.[4] However, "[a]s a general matter, decisions regarding who will be called as a defense witness [are] a matter of trial strategy and tactics, and these decisions, even if erroneous, do not constitute ineffective assistance of counsel unless they are so unreasonable that no competent attorney would have made them under the circumstances." *Mohamud v. State*, 297 Ga. 532, 534 (2) (a) (773 SE2d 755) (2015).

At the motion for new trial hearing, Mathis' trial counsel testified that he had interviewed Snipes twice before trial, during which Snipes told him that Benton had threatened Snipes, not Mathis, and that Snipes was unsure if he had told Mathis about

---

[4] Even assuming Mathis' nephew and mother provided testimony at an immunity motion hearing that supported a voluntary manslaughter theory, such testimony would not be sufficient to show self-defense, which Mathis must show to succeed on an immunity motion, see Division 2 (a) above. See *Velasco*, 306 Ga. at 892 (3) (a).

Benton's threats.[5]  This was consistent with Snipes' testimony at the hearing that Benton had threatened Snipes, but that Benton had never threatened Mathis.  Although Mathis' trial counsel did not recall whether he had asked Snipes whether Benton was known to carry a gun, Snipes testified at the hearing that he had seen Benton carry a gun and that Benton and Mathis had gotten into a "big" argument on the day before the shooting. However, there was no evidence that Benton was armed at the time of the shooting, and an earlier argument between Benton and Mathis would not alone support a self-defense theory. See *Carter v. State*, 285 Ga. 565, 566 (2) (678 SE2d 909) (2009) ("[t]he fact that [the victim] may have made a threat against [the appellant's father] earlier in the evening" of the shooting was not enough to show the appellant was in imminent danger from the victim). Nor would a prior argument alone support a voluntary manslaughter theory. See *Johnson v.*

---

[5] Snipes was listed on the State's supplemental witness list, but was not called to testify at trial.  At the start of trial, counsel told the trial court that Snipes told him that Benton had threatened Snipes, and that Mathis was aware of this threat.

*State*, 297 Ga. 839, 842-843 (2) (778 SE2d 769) (2015) (voluntary manslaughter charge was not warranted in malice murder prosecution despite the fact that defendant alleged that he and the victim had an antagonistic relationship). Given that Snipes' testimony would not alone have supported either a self-defense or voluntary manslaughter theory, we cannot say that trial counsel's decision not to call Snipes as a witness was so unreasonable that no competent attorney would have made that decision under similar circumstances. See *Mohamud*, 297 Ga. at 534 (2) (a).

Mathis' mother, Williams, did testify at trial, but as a witness for the State. Williams testified that she did not witness the shooting because she was in bed. Mathis' trial counsel cross-examined Williams, focusing on questions about Mathis' mental health. However, in response to questions at the hearing on the motion for new trial about whether Mathis' trial counsel spoke with Williams, trial counsel testified that he spoke with her before trial, but did not obtain any information from her that would have supported a self-defense claim and did not remember Williams

telling him that she had found a gun in the house after the shooting. Williams later testified at the motion hearing that Benton kept guns in the shared residence, that after the shooting she found a pistol hidden under a bookbag on a dining room chair that police had missed during their search of the shared residence, and that she never saw any violent behavior between Mathis and Benton.

Mathis cannot establish that his trial counsel performed deficiently. There is no indication that Williams would have given any evidence that would have been important to the defense had she been called to testify as a defense witness, rather than as a State's witness.[6] Williams was cross-examined by Mathis' counsel, and "[t]he scope of cross-examination is grounded in trial tactics and strategy, and will rarely constitute ineffective assistance of counsel." *Gaston v. State*, 307 Ga. 634, 642 (2) (d) (837 SE2d 808) (2020). Trial counsel's cross-examination of Williams focused on questions about Mathis' mental health, which we cannot say was unreasonable in

---

[6] There has been no showing that Williams was unable to provide any testimony about the events surrounding Benton's shooting simply because she was called to testify by the State rather than by Mathis.

light of the fact that Williams did not witness the shooting, did not tell trial counsel about finding a gun in the home, and given that trial counsel's strategy was to secure a voluntary manslaughter conviction. This claim of ineffective assistance therefore fails.

*Judgment affirmed. All the Justices concur.*

DECIDED JUNE 16, 2020.

Murder. Fulton Superior Court. Before Judge McBurney.

*William A. McQueen*, for appellant.

*Paul L. Howard, Jr., District Attorney, Lyndsey H. Rudder, Kevin C. Armstrong, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General*, for appellee.