310 Ga. 520
FINAL COPY

S20A1192. LANIER v. THE STATE.

BETHEL, Justice.

Antonio Lanier appeals his convictions for malice murder and other offenses in connection with the shooting deaths of Auda and Gerald Anne Love.[1] Lanier contends that the evidence was insufficient to support his convictions because it was based on his

[1] The crimes occurred on October 11, 2012. On May 20, 2014, a Wayne County grand jury indicted Lanier and Heather Tipton on two counts of malice murder (Counts 1 and 2), one count of theft by taking Mr. Love's firearms (Count 3), one count of armed robbery for taking firearms, a wallet, and a purse belonging to the Loves (Count 4), and one count of possession of a firearm during the commission of a felony (Count 5). Lanier and Tipton were also charged with one count of tampering with the evidence (Count 6), along with Lintay Beard. Lanier was tried by a jury in February 2015 and was found guilty on all counts. Tipton pled guilty to two counts of murder, and Beard pled guilty to tampering with the evidence. Their cases are not part of this appeal. The trial court sentenced Lanier to two concurrent sentences of life in prison without the possibility of parole for the malice murder convictions, a consecutive term of life in prison for armed robbery, ten years consecutive for theft by taking, five years consecutive for firearm possession, and twelve months concurrent for tampering with evidence.

On March 6, 2015, Lanier filed motion for a new trial, which he subsequently amended on April 2, 2019. The trial court denied the motion for new trial on February 21, 2020. Appellate counsel filed a timely notice of appeal on February 28, 2020. This case was docketed in this Court to the August 2020 term and submitted for a decision on the briefs.

co-defendants' uncorroborated testimony, that he received ineffective assistance of counsel at trial, and that the trial court erred by admitting crime scene and autopsy photographs and by improperly excusing certain potential jurors. For the reasons set forth below, we affirm.

1. Viewed in the light most favorable to the verdict, the evidence presented at trial showed the following. Approximately one week before the shootings, Lanier and his girlfriend, Heather Tipton, discussed killing Tipton's mother, Gerald Ann Love, and stepfather, Auda Love, and stealing their money and guns. At the time of this discussion, Lanier's close friend and roommate, Lintay Beard, was present.

Around 7:00 a.m. on October 11, 2012, the day of the shootings, Tipton drove to Lanier's residence. While there, Lanier and Tipton attempted to recruit Beard to assist with their plan, but Beard refused. Beard then observed Lanier and Tipton leave the residence in Tipton's sister's yellow Volkswagen Beetle. Lanier and Tipton then drove to the Loves' house and stayed there for several hours

2

while the Loves were at work. Tipton then went to pick up Mrs. Love from work. When Tipton and Mrs. Love returned, Mrs. Love walked into her bedroom to change clothes while Tipton remained in another part of the house. Tipton then heard two gunshots. When she looked into Mrs. Love's room, she saw Lanier holding Mr. Love's pistol. Lanier pointed the pistol at Tipton, and then turned and continued shooting Mrs. Love in the master bathroom.

Sometime later that same day, Mr. Love returned home from work. He walked through the master bedroom into the master bathroom, where he saw Mrs. Love's body. Lanier, armed with Mr. Love's shotgun, followed Mr. Love into the bathroom and shot him. Lanier then retrieved a different gun and continued shooting Mr. Love.

To create the appearance that the Loves had been robbed, Lanier knocked over items in the bedroom. Lanier and Tipton also stole Mr. Love's wallet, Mrs. Love's checkbook and purse, and five of the Loves' guns. They then left the house in Mrs. Love's vehicle and drove to Lanier's home where they picked up Beard. The three went

3

to the bank together, and Tipton cashed a forged $300 check from Mrs. Love's checkbook. Afterward, the three checked into a hotel.

Later that day, Lanier and Beard drove to the home of their friend, Joey Perez, and asked him to store the guns they had stolen. Perez agreed. The next day, Lanier, Tipton, and Beard drove to a lake, where Lanier instructed Beard to throw Mrs. Love's purse into the water. At some point, Lanier also told Beard that he had shot the Loves.

When Mr. Love did not appear for work on October 12, his supervisor called his cell phone multiple times but received no answer. The supervisor drove to Mr. Love's home and found the front door open and the home in disarray. He then called 911.

Law enforcement officers found the Loves' deceased bodies on their bathroom floor and the yellow Volkswagen in the driveway. Police also found a number of spent shell casings from several different types of guns inside the home, including a .22-caliber, a .380, and a .40-caliber, as well as from a 12-gauge shotgun. Autopsy results revealed that Mr. Love sustained 31 injuries, including

4

shotgun wounds to his face and shoulder and a number of other gunshot wounds to his arm, back, abdomen, chest, thigh, and buttocks. Mrs. Love sustained 15 injuries, including gunshot wounds to her chest, abdomen, and legs.

Tipton eventually confessed to her involvement in the shootings and reported Lanier's and Beard's involvement to law enforcement officers. Beard later showed officers where he had disposed of the purse, and it was recovered along with Mr. Love's wallet, Mrs. Love's checkbook, and shell casings. Additionally, officers recovered four firearms from Perez's home and determined that three of them had fired shells consistent with some of those found at the Loves' home. Investigators also found Mr. Love's blood on Lanier's pants, and a store surveillance video shows that Lanier was wearing those pants on the day of the shooting. Investigators also recovered several of the Loves' credit cards from Lanier and Beard's bedroom.

2. Lanier first argues that the evidence presented at trial was insufficient to support his convictions because it was based on the

uncorroborated testimony of his co-defendants, Tipton and Beard. We conclude that Lanier was not convicted solely on the basis of the testimony of a single accomplice and that the evidence was legally sufficient.

(a) Under Georgia law, in felony cases where the only witness is an accomplice to the crimes, that witness's testimony alone is insufficient to support a defendant's convictions. See OCGA § 24-14-8. When "evidence presented at trial could support a finding that a witness acted as an accomplice, it is for the jury to determine whether the witness acted in such a capacity." *Doyle v. State*, 307 Ga. 609, 612 (2) (a) (837 SE2d 833) (2020). In this case, the jury heard evidence that authorized it to determine that both Tipton and Beard acted as accomplices with respect to one or more of the crimes the jury found Lanier to have committed.

Even if we assume that the jury determined that both Tipton and Beard were accomplices, there was legally adequate evidence to corroborate their respective testimony.

Although OCGA § 24-14-8 provides that corroboration is

6

required to support a guilty verdict in felony cases where the only witness is an accomplice, only slight evidence of corroboration is required. The necessary corroboration may consist entirely of circumstantial evidence. . . . The evidence need not be sufficient in and of itself to warrant a conviction, so long as it is independent of the accomplice's testimony and directly connects the defendant to the crime or leads to the inference of guilt. The sufficiency of the corroboration is a matter for the jury to decide.

(Citation and punctuation omitted.) *Raines v. State*, 304 Ga. 582, 588 (2) (a) (820 SE2d 679) (2018). Further, "it is well established that where, as here, more than one accomplice testifies at trial, the testimony of one accomplice may be corroborated by the testimony of the other[ ]." (Citation and punctuation omitted.) *Ramirez v. State*, 294 Ga. 440, 442 (754 SE2d 325) (2014).

Here, Tipton and Beard substantially corroborated each other's testimony about the crimes. Tipton testified that she and Lanier planned to rob and kill the Loves, that she observed Lanier shoot the victims, and that she and Lanier stole their belongings. Beard testified that he was present when Lanier and Tipton initially discussed robbing and killing the Loves, that they attempted to

7

recruit him on the day of the shootings, that Lanier subsequently confessed to shooting the Loves, and that Beard assisted Lanier in getting rid of the stolen guns and Mrs. Love's purse.

Other evidence corroborated both Beard's and Tipton's testimony. Perez confirmed that Lanier and Beard had asked him to store the guns that were found at his home — three of which were determined to have fired the shell casings found at the Loves' home. In addition, investigators found Mr. Love's blood on Lanier's pants and recovered the Loves' credit cards from his and Beard's room. In all, the testimony of Tipton and Beard was adequately corroborated and thus satisfies the requirements of OCGA § 24-14-8. See *Ramirez*, 294 Ga. at 442.

(b) To the extent that Lanier argues that the evidence against him was insufficient as a matter of due process, we have also reviewed the record and determined that the evidence, as summarized above, was sufficient to enable a rational trier of fact to find Lanier guilty beyond a reasonable doubt of the crimes of which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307 (99 SCt

2781, 61 LE2d 560) (1979). See also *Brown v. State*, 302 Ga. 454, 456 (1) (b) (807 SE2d 369) (2017) ("It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence." (citation and punctuation omitted)).

3. Lanier next argues that his trial counsel provided constitutionally ineffective assistance by failing to pursue a multiple-shooter defense theory and a theory that Tipton and her sister stood to benefit financially from the Loves' death. He also argues that his trial counsel provided ineffective assistance by failing to adequately investigate the case, failing to ask certain questions of witnesses at trial, and failing to request funds for an investigator and an expert witness.

To prevail on a claim of ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that the deficient performance resulted in prejudice to the defendant. See *Strickland v. Washington*, 466 U. S. 668, 687-696 (104 SCt 2052, 80 LE2d 674) (1984); *Wesley v. State*, 286 Ga. 355, 356 (3) (689 SE2d 280) (2010). To satisfy the deficiency prong, a

defendant must demonstrate that his attorney "performed at trial in an objectively unreasonable way considering all the circumstances and in light of prevailing professional norms." *Romer v. State*, 293 Ga. 339, 344 (3) (745 SE2d 637) (2013); see also *Strickland*, 466 U. S. at 687-688. This requires a defendant to overcome the "strong presumption" that trial counsel's performance was adequate. (Punctuation omitted.) *Marshall v. State*, 297 Ga. 445, 448 (2) (774 SE2d 675) (2015). To satisfy the prejudice prong, a defendant must establish a reasonable probability that, in the absence of counsel's deficient performance, the result of the trial would have been different. See *Strickland*, 466 U. S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. "If an appellant fails to meet his or her burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong." *Lawrence v. State*, 286 Ga. 533, 533-534 (2) (690 SE2d 801) (2010).

(a) Lanier first argues that his trial counsel performed deficiently by failing to present alternative theories of the crimes,

including that multiple shooters were involved (despite Tipton's testimony to the contrary) and that Tipton would have benefitted financially from the Loves' death because she was the beneficiary of a life insurance policy held by the Loves and because Tipton's sister stood to inherit assets from the Loves' estate. We disagree that trial counsel performed deficiently by failing to present these theories to the jury.

At trial, Lanier's counsel presented the theory that Lanier had simply not been involved in the shootings of the Loves. Trial counsel testified at the hearing on the motion for new trial that he arrived at this defense theory after consulting with Lanier and based on Lanier's representations that he was not present at the time of the shooting. Trial counsel further testified that he did not present any alternative theories of defense at trial because he "didn't see any" other theories of how the shootings occurred based on the available evidence.

With respect to the Loves' life insurance policy, trial counsel testified that he reviewed it but did not believe that Tipton stood to

11

benefit because Tipton's son was actually the beneficiary, and the money was expected to go into a trust with a court-ordered guardian. Further, by the time Tipton took the stand at Lanier's trial, she had already pled guilty to killing the Loves, so her involvement was not in contention. As for Tipton's sister, trial counsel did not believe the Loves' estate was large enough to be a motive for claiming her involvement in the murder.

The decision as to which defense theory to pursue and which theories to reject is within the province of trial counsel, and such decisions only support a claim of ineffective assistance when they are objectively unreasonable. See *Floyd v. State*, 307 Ga. 789, 802 (4) (b) (837 SE2d 790) (2020). Here, based on our review of the record, including the testimony of trial counsel at the hearing on the motion for new trial, we conclude, like the trial court, that trial counsel did not perform deficiently by failing to advance the defense theories Lanier argues on appeal. "The fact that appellate counsel would have pursued the defense in different ways . . . does not render trial counsel ineffective." *Smith v. State*, 283 Ga. 237, 239 (2) (b) (657

SE2d 523) (2008). Accordingly, this claim of ineffective assistance fails.

(b) Lanier further argues that trial counsel failed to properly investigate the case, failed to ask certain questions of witnesses at trial, and failed to ask for funds for an investigator and an expert witness. More specifically, Lanier argues that trial counsel should have looked into: whether any tests were done by law enforcement to see if Tipton or Beard had fired a weapon; who would have benefitted financially from the Loves' death (and should have asked questions of witnesses on this issue); and whether other witnesses (such as those present at the Perez residence or the Loves' neighbor) could contradict the State's timeline of events. Lanier also argues that trial counsel should have questioned the bank teller about Tipton's demeanor when she cashed the check on the day of the murders. Finally, Lanier argues that trial counsel should have requested funds to hire an investigator and an expert witness to counter the State's firearm expert.

In support of these claims, however, Tipton has failed to carry

his burden of establishing through "competent evidence" that trial counsel performed deficiently. (Citation and punctuation omitted.) *Henry v. State*, 307 Ga. 281, 283 (2) (b) (835 SE2d 602) (2019). "In the absence of evidence to the contrary, counsel's decisions are presumed to be strategic and thus insufficient to support an ineffective assistance of counsel claim." (Citation and punctuation omitted.) *Mitchell v. State*, 290 Ga. 490, 492 (4) (a) (722 SE2d 705) (2012). The decision about what witnesses to call and what questions to ask them is generally the result of reasonable trial strategy. See *Mathis v. State*, 309 Ga. 110, 115 (2) (b) (844 SE2d 736) (2020) ("[A]s a general matter, decisions regarding who will be called as a defense witness are a matter of trial strategy and tactics, and these decisions, even if erroneous, do not constitute ineffective assistance of counsel unless they are so unreasonable that no competent attorney would have made them under the circumstances." (citation and punctuation omitted)); *Sullivan v. State*, 308 Ga. 508, 512 (2) (b) (842 SE2d 5) (2020) ("[T]he decision whether to present an expert witness, like other decisions about which defense witnesses to call,

is a matter of trial strategy that, if reasonable, will not sustain a claim of ineffective assistance." (citation and punctuation omitted)); *Davis v. State*, 306 Ga. 140, 146 (3) (e) (829 SE2d 321) (2019) ("Decisions about what particular questions to ask on cross-examination are quintessential trial strategy and will rarely constitute ineffective assistance of counsel." (citation and punctuation omitted)). Moreover, Lanier has failed to point to evidence tending "to show what further investigation would have revealed or to offer any additional witnesses to demonstrate that their testimony would have been relevant and favorable." *Fairclough v. State*, 276 Ga. 602, 605 (4) (581 SE2d 3) (2003). Because Lanier has failed to make a showing that counsel's decisions were not the product of reasonable trial strategy, he has "failed to show deficient performance." (Citation and punctuation omitted.) *Mitchell*, 290 Ga. at 492 (4) (a).

(c) Lanier also argues that a witness who was not called at trial — a truck driver who allegedly drove past the Loves' residence — could have countered the State's timeline as to when the crimes were

15

committed. However, that alleged witness did not testify at the hearing on Lanier's motion for new trial. Instead of presenting testimony from this witness at the hearing, Lanier relied on a summary of the witness's unsworn statements to a GBI agent. Regarding this purported witness who never testified, Lanier "must introduce either testimony from the uncalled witness or a legally recognized substitute for his or her testimony. He may not rely on hearsay and speculation to prove ineffective assistance." (Citation and punctuation omitted.) *Harris v. State*, 304 Ga. 652, 655 (2) (a) (821 SE2d 346) (2018). The unsworn interview is not an appropriate substitute for testimony. See id. Therefore, Lanier provides no evidentiary basis to make even a threshold claim of prejudice, which he bears the burden of proving. See id. Accordingly, Lanier's claim of ineffective assistance of trial counsel fails.

4. Lanier next argues that the trial court abused its discretion by admitting numerous crime scene and autopsy photographs over his objection that the photographs were repetitive and irrelevant and served only to inflame and prejudice the jury. We see no abuse

of discretion in the admission of the photographs at issue.

> Pursuant to OCGA § 24-4-402, "[a]ll relevant evidence shall be admissible[.]" To evaluate relevancy, this Court relies on OCGA § 24-4-401, which defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." However, relevant evidence may be excluded under OCGA § 24-4-403 [("Rule 403")] "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Id. "The 'major function' of Rule 403 is to 'exclud(e) matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect.' "

(Citations omitted.) *Ragan v. State*, 299 Ga. 828, 832 (3) (792 SE2d 342) (2016). Moreover, "the exclusion of relevant evidence under Rule 403 is an extraordinary remedy that should be used only sparingly." (Citation and punctuation omitted.) *Benton v. State*, 301 Ga. 100, 103 (4) (799 SE2d 743) (2017).

Here, the State introduced eight autopsy photographs to which Lanier objected at trial. The challenged autopsy photographs depicted the Loves' gunshot wounds from different angles, but they

17

do not depict the victims' autopsy incisions. We conclude that in the context of murder case autopsy photographs, the photographs of the Loves' wounds are neither especially gory nor gruesome. See *Pike v. State*, 302 Ga. 795, 799 (3) (809 SE2d 756) (2018). Further, the photographs were relevant to show the nature and location of the victims' wounds, which corroborated the State's evidence of the circumstances of the killings. See id. at 799-800 (3). The challenged photographs were therefore admissible, as Lanier has made no showing that the photographs warranted exclusion under Rule 403. See id. at 800 (3). See also *Allen v. State*, 307 Ga. 707, 710 (3) (838 SE2d 301) (2020).

The State also published 36 photographs through a GBI agent that depicted various images of the crime scene, over defense counsel's continuing objection. The State then sought to introduce some additional photographs that showed both victims' bodies at the crime scene. The trial court excused the jury, reviewed the photographs the State sought to admit, and ultimately admitted the photographs over objection, finding that "while they're bloody[,]

18

they've been limited down, from a thousand down to approximately . . . seven photographs and all either denote bullet wounds, defects in the walls and . . . an intrusion into the victim's pocket." As we have previously held, "photographic evidence that fairly and accurately depicts a body or crime scene and is offered for a relevant purpose is not generally inadmissible under [OCGA § 24-4-403] merely because it is gruesome." *Plez v. State*, 300 Ga. 505, 508 (3) (796 SE2d 704) (2017). The trial court did not abuse its discretion by admitting the challenged photographs.

5. Lastly, Lanier argues that the trial court improperly excused six potential jurors. We disagree.

The record reflects that the trial court excused five potential jurors for hardship after an individualized inquiry. Three of those excused for hardship had medical reasons, one was too distressed about her husband's recent death to serve, and one was a full-time caretaker for her grandmother who was in hospice.

The trial court did not abuse its discretion in excusing these five potential jurors for hardship. The trial court may excuse a

19

potential juror where the juror shows "good cause." OCGA § 15-12-1.1 (a) (1); see also *Young v. State*, 290 Ga. 392, 393-394 (2) (721 SE2d 855) (2012). "It is well-settled that a trial court may excuse a potential juror for 'good cause' if jury service would impose an undue hardship." (Citations and punctuation omitted.) *Davis v. State*, 306 Ga. 764, 768 (2) (833 SE2d 109) (2019). And whether to excuse a juror for hardship lies within the trial court's discretion. See *Walker v. Hagins*, 290 Ga. 512, 514 (722 SE2d 725) (2012). The trial court had grounds for finding a hardship with respect to each of these five potential jurors.

As for the sixth potential juror, the trial court excused him because he had known Lanier's family for about 40 years and said that his relationship would create bias and impact the verdict. Although the juror said that he wanted to believe he could remain impartial, he consistently indicated that his preexisting relationship would color his evaluation of the evidence and witness testimony.

"The trial court has broad discretion to determine a potential juror's impartiality and to strike for cause jurors who may not be

fair and impartial." *DeVaughn v. State*, 296 Ga. 475, 477 (2) (769 SE2d 70) (2015). See also *Peterson v. State*, 282 Ga. 286, 288 (2) (647 SE2d 592) (2007) ("Whether to strike a juror for cause lies within the sound discretion of the trial court." (citation and punctuation omitted)). "A conclusion on an issue of juror bias is based on findings of demeanor and credibility which are peculiarly in the trial court's province, and those findings are to be given deference." (Citation and punctuation omitted.) *Peterson*, 282 Ga. at 288 (2). Here, the prospective juror expressed bias for Lanier based on his relationship. We see no abuse of discretion in the trial court striking this prospective juror for cause. See *Scales v. State*, 310 Ga. App. 48, 53-54 (4) (712 SE2d 555) (2011) (no abuse of discretion where trial court struck juror who expressed bias for cause); *Hillman v. State*, 296 Ga. App. 310, 313 (2) (674 SE2d 370) (2009) (no abuse of discretion where trial court struck jurors for cause based on their personal relationships with defendant).

*Judgment affirmed. Melton, C. J., Nahmias, P. J., and Boggs, Peterson, Ellington, and McMillian, JJ., concur. Warren, J., not participating.*

21

DECIDED DECEMBER 7, 2020.
Murder. Wayne Superior Court. Before Judge Kelley.

*Earle J. Duncan III*, for appellant.

*Jacquelyn L. Johnson, District Attorney, Thomas E. Buscemi, John B. Johnson III, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew D. O'Brien, Assistant Attorney General*, for appellee.