313 Ga. 319
FINAL COPY

S22A0005.  WILSON v. THE STATE.

BOGGS, Presiding Justice.

Appellant Roney Wilson challenges his 2018 convictions for felony murder and other crimes in connection with the shooting death of his girlfriend Jimeshia Gordon.[1] In his sole enumeration of

---

[1] The crimes occurred on April 25, 2016. On April 2, 2018, a Camden County grand jury indicted Appellant for felony murder, aggravated assault, voluntary manslaughter, felony involuntary manslaughter, cruelty to children in the first degree, cruelty to children in the second degree, and possession of a firearm during the commission of a felony. Appellant was previously indicted on May 26, 2016, for charges arising from the same incident; on April 4, 2018, that case was incorporated into the case arising from the April 2, 2018 indictment. After a trial from April 9 to 11, 2018, the jury found Appellant guilty of felony murder, aggravated assault, cruelty to children in the second degree, and possession of a firearm during the commission of a felony. The jury found Appellant not guilty of cruelty to children in the first degree. It did not return a verdict on the voluntary manslaughter or involuntary manslaughter charges. The trial court sentenced Appellant to serve life in prison for felony murder, ten years to serve consecutively for cruelty to children in the second degree, and five years to serve consecutively for possession of a firearm during the commission of a felony. The court merged the remaining charges. On September 13, 2018, Appellant filed a motion for new trial, which he amended with the assistance of new counsel on December 16, 2019. The trial court held a hearing on the motion for new trial on May 20, 2020, and denied the motion on May 26, 2021. Appellant filed a timely notice of appeal directed to this Court, but the case was erroneously docketed in the Court of Appeals.

error, Appellant contends that he was denied the effective assistance of counsel in two respects: trial counsel did not object to alleged hearsay from a non-testifying witness used by the State to prove motive, and trial counsel argued a defense that was allegedly contradicted by expert evidence. Because Appellant has not established that trial counsel performed deficiently in these respects, we affirm.

1. The evidence at trial showed the following. In April 2016, Appellant was dating Gordon, who lived with her 13-month-old daughter in an apartment across the street from Appellant's sister, Veronica Wilson. During the evening of April 25, 2016, Gordon's next-door neighbor called 911 and reported hearing a man and a woman in Gordon's apartment shouting, fighting, and bumping into the walls, as well as a baby crying. One minute after the first call, Appellant called 911 to report that Gordon had been shot, that

Appellant subsequently filed a motion to transfer the case to this Court; that motion was granted, and the case was transferred on July 13, 2021. The case was docketed to the term beginning in December 2021 and submitted for a decision on the briefs.

2

"[s]omebody . . . came in" and "[t]he gun just went off," and that he was "looking for the person that did it." By the time the police arrived at the apartment, Appellant had left. The police found Gordon lying on the floor, gurgling, and bleeding from her head and neck. The police also found Gordon's daughter in the corner of the bedroom, crying and covered in blood. Officer Todd Isernhagen removed the child from the scene and handed her to Veronica after she identified herself as the child's aunt. After Gordon was removed from the scene and transported to the hospital, Veronica told Officer Isernhagen that Appellant had shot Gordon.

Veronica testified at trial as follows: On the night of the shooting, she was at her apartment and overheard Appellant and their cousin, Terrance Williamson, talking in the parking lot. She "vaguely" recalled overhearing Williamson tell Appellant that Gordon was cheating on him,[2] and then seeing Appellant leave the

---

[2] While Veronica was reluctant at trial to admit she overheard this conversation, she told Investigator Chris Winkle in a recorded field interview played for the jury that she heard Williamson tell Appellant that Gordon was cheating on Appellant.

parking lot to go back into Gordon's apartment. While Veronica was riding with Gordon's daughter in the ambulance to the hospital, Appellant attempted to call Veronica several times but was unable to get through. Once the ambulance arrived at the hospital, Appellant's call to Veronica finally connected; she was able to speak with her brother and told him he needed to "turn himself in."

Officer Isernhagen testified at trial as follows: During his interaction with Veronica at the scene just after the shooting, she told him that Williamson had told Appellant that Gordon was "fooling around, messing around on [Appellant] and that's why he went up there [to Gordon's apartment]." Veronica also told Officer Isernhagen that she observed Appellant go up the stairs toward Gordon's apartment after speaking with Williamson and that she later saw Appellant "come running out of the apartment and then run off" behind a nearby building. While Officer Isernhagen was at the hospital to check on Gordon's daughter, Appellant called Veronica, who answered and spoke to Appellant on speaker phone so that Officer Isernhagen could hear. During the call, when

4

Veronica asked Appellant why he shot Gordon, he said he "didn't mean to" and that "he pointed [the gun] at her and it accidentally went off."

Investigator Chris Winkle testified at trial as follows: After Veronica returned from the hospital, he interviewed her just outside the apartment complex. During the interview, Veronica received a phone call from Appellant but did not answer. Veronica told Investigator Winkle that Appellant had told her over the phone while she was at the hospital that the shooting was an accident and that he had pulled a gun and it went off. In a recorded field interview played for the jury, Veronica told Winkle that Appellant told her "I pulled a gun out, we wrestled with the gun, and then . . . I shot her."

GBI medical examiner Dr. Edmund Donoghue reviewed the autopsy report[3] and testified that the cause of Gordon's death was a gunshot wound to the chest. According to the autopsy report, the bullet entered above Gordon's right clavicle at a downward

---

[3] The medical examiner who performed the autopsy and prepared the report, Dr. Jamie Downs, retired in 2016.

5

trajectory, fractured three ribs, and became lodged behind her third rib. The report also stated that the bullet was fired from an "indeterminate range," and Dr. Donoghue testified at trial that "indeterminate range means that it wasn't close range or contact" and that "as a rule of thumb . . . [, indeterminate range] means more than 18 inches away." While the murder weapon was not recovered, firearms examiner Brian Leppard testified that the bullet fragments found in the body were from a .22-caliber bullet likely fired from a .22-caliber pistol or revolver.

Appellant fled from the scene and was eventually arrested four months later in Indianapolis, Indiana.

2. Appellant contends he was denied the effective assistance of trial counsel. To prevail on his claim of ineffective assistance, Appellant must prove both that his lawyer was professionally deficient and that he was prejudiced by this deficient performance. See *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). To prove deficient performance, he must show that his attorney "performed at trial in an objectively unreasonable

way considering all the circumstances and in light of prevailing professional norms." *Romer v. State*, 293 Ga. 339, 344 (3) (745 SE2d 637) (2013). This requires Appellant to "overcome the strong presumption that counsel's performance fell within a wide range of reasonable professional conduct, and that counsel's decisions were made in the exercise of reasonable professional judgment." *Marshall v. State*, 297 Ga. 445, 448 (2) (774 SE2d 675) (2015) (citation and punctuation omitted). Importantly, "[i]n the absence of evidence to the contrary, counsel's decisions are presumed to be strategic and thus insufficient to support an ineffective assistance of counsel claim." *Lanier v. State*, 310 Ga. 520, 526 (3) (b) (852 SE2d 509) (2020) (citation and punctuation omitted). And to prove prejudice, Appellant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U. S. at 694 (III) (B). "If either *Strickland* prong is not met, this Court need not examine the other prong." *Palmer v. State*, 303 Ga.

810, 816 (IV) (814 SE2d 718) (2018). We conclude that Appellant's counsel did not render ineffective assistance for the reasons stated below.

(a) Appellant asserts that his trial counsel was deficient in failing to object to the State's use of Williamson's hearsay statement that Gordon was cheating on Appellant to show motive. Specifically, Appellant claims that because there is no way to know whether the State was actually using Williamson's statement to prove motive rather than to prove the truth of the matter asserted, his counsel was deficient in not making a hearsay objection. However, an out-of-court statement is not hearsay if offered for some purpose other than to prove the truth of the matter asserted, including to show motive because of its effect on the person hearing it. See *Gates v. State*, 298 Ga. 324, 326 (2) (781 SE2d 772) (2016) (suggestive text messages from victim to defendant's girlfriend were offered not for their truth but for their effect on the defendant when he learned of them, so not hearsay). See also OCGA § 24-8-801 (c) (defining "hearsay" as "a statement, other than one made by the declarant

8

while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted"). The State introduced Williamson's statement to show only how it motivated Appellant to kill Gordon, so any hearsay objection during the trial would have been meritless and overruled. See *Walker v. State*, 306 Ga. 637, 645 (2) (b) (832 SE2d 783) (2019) (failure to make meritless hearsay objection not deficient performance).

Appellant also argues that trial counsel was deficient in failing to lodge a Confrontation Clause objection to the State's use of Williamson's statement, as Williamson did not testify at trial. But the Confrontation Clause of the Sixth Amendment to the United States Constitution applies only to testimonial statements, and a statement is testimonial only if "its primary purpose was to establish evidence that could be used in a future prosecution." *Favors v. State*, 296 Ga. 842, 845 (2) (770 SE2d 855) (2015) (citation and punctuation omitted). Williamson made the statement to Appellant apparently to inform him of Gordon's cheating. There is no indication that Williamson was contemplating a future

9

prosecution, particularly not for a shooting that had not yet happened. See *Denson v. State*, 307 Ga. 545, 548 (2) (837 SE2d 261) (2019). Appellant has not met his burden to show that trial counsel's failure to object was unreasonable, so Appellant's first ineffective assistance of counsel claim fails.

(b) Appellant also asserts that his trial counsel was deficient because he chose to argue only the defense of accident, which Appellant argues was contradicted by Dr. Donoghue's expert testimony. However, an attorney's decision about which defense to present is a question of trial strategy and will generally be considered reasonable if supported by evidence in the record. See *Hendrix v. State*, 298 Ga. 60, 62-63 (2) (a) (779 SE2d 322) (2015). Further, "decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so patently unreasonable that no competent attorney would have followed such a course." *Richards v. State*, 306 Ga. 779, 781 (2) (833 SE2d 96) (2019) (citation and punctuation omitted).

Trial counsel testified at the motion for new trial hearing that

the decision to offer this defense was made, in part, because of the autopsy report showing the trajectory of the bullet and location where it hit Gordon. While Appellant now argues that Dr. Donoghue's testimony defining "indeterminate range" undermined this defense, trial counsel testified that because Dr. Donoghue's testimony indicated that the shot traveled in a downward trajectory, the bullet wound was more consistent with a struggle and an accidental discharge of the firearm as opposed to a straight-on shot, which would be more consistent with a murder. With this evidence in support, trial counsel argued an accident theory and even acted out the struggle that led to the alleged accident in his closing argument. Because some evidence supported the defense theory, and there was no other obviously stronger defense theory available, Appellant has not shown trial counsel's decision to be patently unreasonable. See *Richards*, supra. While Appellant now contends that trial counsel should have argued for an involuntary manslaughter conviction instead of an outright acquittal, the "[p]ursuit of an 'all or nothing' defense is a permissible trial

11

strategy." *Smith v. State*, 301 Ga. 348, 353 (III) (b) (801 SE2d 18) (2017) (citation omitted). Trial counsel testified that Appellant was not only aware of but also approved of trial counsel's decision to go with this "all or nothing" defense and seek an acquittal rather than a conviction on a lesser charge. Moreover, although counsel did not argue that Appellant committed involuntary manslaughter, trial counsel requested a jury instruction on that lesser offense, allowing the jury to consider that alternative without Appellant appearing to concede guilt. Importantly, even though it was instructed on the lesser offense of involuntary manslaughter, the jury chose to convict Appellant of murder. Accordingly, Appellant's second ineffective assistance of counsel claim also fails.

*Judgment affirmed. All the Justices concur.*

Decided February 15, 2022.

Murder. Camden Superior Court. Before Judge Kelley.

*Zell & Zell, Rodney S. Zell*, for appellant.

*Keith Higgins, District Attorney, Benjamin E. Gephardt, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, William C. Enfinger, Assistant Attorney General*, for appellee.