NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: August 9, 2022

S22A0773.  BRIDGES v. THE STATE.

ELLINGTON, Justice.

Appellant Arleshia Bridges appeals her convictions for malice murder and other crimes arising out of the shooting death of Anthony Rankins, Jr.[1] Bridges contends that the trial court erred by denying her motion for new trial based on the general grounds and

---

[1] The crimes occurred on March 1, 2010. Bridges was indicted by a Fulton County grand jury on May 28, 2010, for malice murder (Count 1), felony murder (Count 2), aggravated assault with a deadly weapon (Count 3), and possession of a firearm during the commission of a felony (Count 4). At a December 2012 jury trial, Bridges was found guilty on all counts. On December 14, 2012, Bridges was sentenced to life in prison for the malice murder of Rankins plus an additional five consecutive years to serve in prison for the firearm offense. Because the jury found Bridges guilty of malice murder, the felony murder count was vacated by operation of law, see *Malcolm v. State*, 263 Ga. 369, 371-372 (4) (434 SE2d 479) (1993), and the aggravated assault charge that formed the predicate for the felony murder count merged into the malice murder conviction as a matter of fact for sentencing purposes. Bridges filed a timely motion for new trial, which she amended on May 29, 2015, and October 30, 2018. The trial court conducted a hearing on the amended motion for new trial on November 2, 2018, and denied the motion on December 17, 2018. Bridges filed a timely notice of appeal. The case was docketed in this Court for the April 2022 term and submitted for a decision on the briefs.

striking three prospective jurors for cause. For the reasons that follow, we affirm.

Viewed in the light most favorable to the verdicts, the evidence presented at trial showed that on March 1, 2010, Bridges was arguing with Rankins, her husband of six days, as she followed him in her car as he walked down the sidewalk. When Rankins would not stop walking, Bridges drove her vehicle in front of him, exited her vehicle, and followed him on foot. As Rankins kept walking, Bridges stepped in front of Rankins and shot him twice. Bridges then shot Rankins three more times as he lay on the ground. Rankins died at the scene.

An eyewitness testified at trial that he saw Bridges following Rankins in her car and although he could not hear what Bridges was saying, it seemed that they were arguing or "exchanging words." After Bridges stopped her vehicle and obstructed Rankins's path, Rankins walked around the vehicle and continued walking away. Bridges, who was visibly upset, then exited her vehicle and followed Rankins on foot, telling him, "You ain't just going to walk away."

Bridges proceeded to pull a gun from her coat, say something to Rankins, and shoot Rankins numerous times. A second eyewitness testified to virtually the same facts and also testified that when Bridges was asked immediately after the shooting if she [Bridges] was okay, Bridges stated, "I am now."

Bridges returned to her vehicle and drove away after the shooting but was quickly detained by police. Police recovered a .357-caliber revolver with five empty shell casings from Bridges's coat, which was located in the front seat of her vehicle. Expert testimony at trial established that the bullets recovered from Rankins's body were fired from the gun discovered in Bridges's coat and that Rankins's death was caused by two gunshot wounds to the head and one to the chest. Two other bullets entered and exited Rankins's body but were not fatal.

1. Bridges contends on appeal that the trial court erred by denying her motion for new trial because she presented evidence that Rankins had been physically and sexually abusive towards her and that she shot him "in a panic" when he pulled a knife and she

3

"thought he was going to kill [her]." She argues that, based on this evidence, the trial court should have overturned the jury's verdict on the general grounds under a "thirteenth juror" standard. See OCGA §§ 5-5-20 and 5-5-21. We see no merit in this assertion of error.

When a defendant challenges a conviction on the general grounds under OCGA § 5-5-20 (that the verdict is contrary to the evidence) or § 5-5-21 (that the verdict is strongly against the evidence), a trial court has broad discretion to sit as the "thirteenth juror" and consider certain matters beyond the sufficiency of the evidence. See *Allen v. State*, 296 Ga. 738, 740 (2) (770 SE2d 625) (2015). Additional matters to be considered include conflicts in the evidence, the credibility of witnesses, and the weight of the evidence. See id. However, the decision whether to grant a new trial under OCGA §§ 5-5-20 or 5-5-21 is committed solely to the discretion of the trial court, and "should be exercised with caution [and] invoked only in exceptional cases in which the evidence preponderates heavily against the verdict." *Alvelo v. State*, 288 Ga. 437, 438 (1) (704 SE2d

4

787) (2011) (citations and punctuation omitted). On appeal from a trial court's denial of a motion for new trial on the general grounds, we review the evidence under the standard set forth in *Jackson v. Virginia*, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979). See *Dent v. State*, 303 Ga. 110, 114 (2) (810 SE2d 527) (2018).

Our review of the record in this case demonstrates that the evidence presented at trial was sufficient to support Bridges's convictions under *Jackson*. In addition, it is clear from the trial court's order denying Bridges's motion for new trial that the court understood its discretion to grant Bridges a new trial on the general grounds and that it independently reweighed the evidence presented at trial. The court's order specifically states that it considered the credibility of the witnesses and conflicts in the evidence, as well as the weight of the evidence presented at trial. The trial court, therefore, ruled on Bridges's claim based on its independent review of the trial record and found no discrepancy between the jury's conclusions regarding the weight of the evidence and credibility of the witnesses and the court's views of those

5

matters. See *Fortson v. State*, 313 Ga. 203, 212-213 (2) (869 SE2d 432) (2022) (rejecting appellant's contention that trial court failed to review motion for new trial under the thirteenth juror standard and concluding the evidence to support the verdict was sufficient); *Burney v. State*, 299 Ga. 813, 816 (1) (c) (792 SE2d 354) (2016) (rejecting appellant's contention that the trial court failed to review his motion for new trial under the thirteenth juror standard). Accordingly, this claim of error lacks merit.

2. Bridges also contends the trial court erred by granting the State's motions to strike three prospective jurors – Jurors 16, 46, and 48 – over her objection. See OCGA § 15-12-164 (requiring court to excuse for cause any jurors determined to be "incompetent" or "substantially impaired in [their] ability to be fair and impartial"). We disagree.

"Whether to strike a juror for cause is a matter committed to the sound discretion of the trial court, and we will not find error in an exercise of that discretion absent a showing that the discretion was manifestly abused." *Carter v. State*, 302 Ga. 685, 686 (2) (808

6

SE2d 704) (2017). Such discretion includes the "broad discretion to determine a prospective juror's impartiality and to strike for cause jurors who may not be fair and impartial." *Lanier v. State*, 310 Ga. 520, 529 (5) (852 SE2d 509) (2020) (citation and punctuation omitted). "A conclusion on an issue of juror bias is based on findings of demeanor and credibility which are peculiarly in the trial court's province, and those findings are to be given deference." Id. (citation and punctuation omitted).

Juror 48 initially indicated during voir dire that she did not know Bridges, but she later admitted that she worked as a maintenance porter at the apartment complex where both she and Bridges lived, she considered Bridges to be "an associate," she had had conversations with Bridges, and she would be uncomfortable serving as a juror "due to the fact that [she] kind of [knew Bridges and had] communicated with her." Juror 48 also stated, "I kind of feel like I'm on [Bridges's] side." Although Juror 48 subsequently stated that she thought she could listen to the evidence presented and the court's instructions, she also reaffirmed that she was

"leaning on [Bridges's] side" and that when she heard about the shooting she "couldn't believe it" because "from talking to her, from me working there and her living there, she was just very nice." The trial court struck Juror 48, after hearing her voir dire responses and observing her demeanor, explaining that Juror 48 stated she "knew and liked" Bridges and the court was not convinced Juror 48 would be able to overcome her admitted "strong bias in [Bridges's] favor."

Juror 16 indicated during voir dire that she could not serve as a fair and impartial juror because she had been a victim of domestic violence and had had to physically defend herself. She told the court she felt she was so biased that she would be unable to give the State or Bridges a fair trial. In response to questions related to whether she could listen to the evidence the State would present, Juror 16 responded, "I can listen, but that doesn't necessarily mean that I will agree. I guess my feeling is . . . whomever was the victim, naturally, I would probably side for that person. I'm going to side with the person who is involved in domestic violence, who was the person who took the abuse, because I took the abuse." When specifically asked

8

whether she could listen to the court's instructions, Juror 16 said, "Yes, I could, but I know in my heart, especially if it was something really pertaining to [w]hat happened to me, . . . I'm going to be biased." After considering Juror 16's voir dire responses as a whole, the trial court found her responses established a "leaning or bias" in favor of Bridges and excused her for cause.

Juror 46 similarly indicated she twice had been a victim of domestic violence and had had to physically defend herself. She also stated she had witnessed a domestic violence dispute between her neighbors. Juror 46 testified that she "doubted whether [she] would be a good juror," felt her "emotions could get into the case[,]" and thought her life experiences could keep her from being fair and impartial because, "[w]hat he did to me, what they did to me was so wrong . . . It may play out in my mind, listening to the evidence, what happened to me." When asked by defense counsel whether her experiences with domestic violence would prevent her from listening to the evidence, Juror 46 gave the example of a domestic dispute she witnessed between her neighbors, stating that a neighbor who had

9

beaten his wife "doesn't have a leg to stand on with me, after I saw what he did to her. I don't want to hear anything he has to say. . . . I don't care what he would have to say." When asked again whether she could listen to the evidence and follow the court's instructions, Juror 46 stated that although she "could hear what the judge asks of [her], there was a "very strong possibility" that her emotions would affect her ability to be fair and impartial. The trial court struck Juror 46 for cause because her voir dire responses indicated her emotions could prevent her from complying with the court's instructions.

We see no abuse of discretion in the trial court's decision to excuse for cause Jurors 16, 46, and 48. Juror 48 was excused based on her personal relationship with Bridges and her statements demonstrating a bias in Bridges's favor. Jurors 16 and 46 were excused based on their personal experiences with domestic violence, as well as their admissions that their prior experiences would make it difficult for them to be impartial. We cannot say that the trial court manifestly abused its discretion by concluding that the voir

dire responses of Jurors 16, 46, and 48 showed a substantial impairment in their ability to be fair and impartial, and therefore, we discern no error in the trial court's decision to excuse them for cause. See *DeVaughn v. State*, 296 Ga. 475, 477-478 (769 SE2d 70) (2015) (holding that trial court properly excused for cause prospective juror who stated his prior experiences with police and prosecutors and discomfort sitting in judgment of others might affect his judgment as a juror); *Robles v. State*, 277 Ga. 415, 419-420 (4) (589 SE2d 566) (2003) (holding that trial court properly struck three prospective jurors for cause where first juror stated she would not stand in judgment of another despite the court's instructions, second juror stated he did not believe law was applied evenly and that he would not be able to determine the relevant facts in the case from the evidence, and third juror stated she could not stand in judgment of another and would not look at any evidence concerning a burned child); *Bell v. State*, 276 Ga. 206, 207 (2) (576 SE2d 876) (2003) (trial court did not abuse discretion when it dismissed for cause prospective juror who worked for a criminal defense firm and stated

11

it would be impossible to give the State a fair trial, despite prospective juror's belief that he could base his verdict solely on the evidence and the law).

*Judgment affirmed. All the Justices concur.*