307 Ga. 707
FINAL COPY

S19A1266. ALLEN v. THE STATE.

PETERSON, Justice.

Johnny Anthony Allen appeals his felony murder and aggravated assault convictions for killing Robert Earl Patton.[1] On appeal, Allen argues that the trial court erred by admitting evidence of events that occurred after the shooting, and by admitting photographs of the autopsy performed on Patton. Allen also argues that the trial court erred and invaded the province of the jury by instructing the jury that a firearm is a deadly weapon as a matter of law. We vacate the sentence for aggravated assault, which merges

---

[1] Allen was indicted by a Lee County grand jury on August 15, 2013, for aggravated assault with a deadly weapon and felony murder predicated on aggravated assault in connection with the shooting death of Patton on October 19, 2012. A jury trial was held from December 9 to 11, 2013, and Allen was found guilty on both counts. Allen was sentenced to life with the possibility of parole for felony murder and a consecutive term of ten years, serve two, for aggravated assault. Allen filed a motion for new trial on January 2, 2014, amended by appellate counsel on July 16, 2018. Following a July 18, 2018 hearing, the trial court denied Allen's motion for new trial on April 11, 2019. Allen filed a timely notice of appeal on April 29, 2019. The case was docketed to this Court's August 2019 term and submitted for a decision on the briefs.

with felony murder by operation of law, and otherwise affirm, because Allen has shown no reversible error by the trial court in admitting evidence or instructing the jury.

Viewed in the light most favorable to the jury's verdicts, the trial evidence showed the following. On October 19, 2012, Allen and his girlfriend, April Morgan, went to dinner with Patton and his wife. Morgan saw a former co-worker at the restaurant and greeted him with a hug, which upset Allen. Over the course of the two-hour dinner, Allen drank three or four margaritas and took at least one tequila shot. Allen grew more aggravated with Morgan because her phone was ringing during dinner, and because she walked in front of him after dinner.

After dinner, the group decided that Morgan and Allen would go home to change clothes, then drive to the Pattons' home before continuing the night elsewhere. When they got home, Allen and Morgan continued arguing. Morgan asked Allen for the car keys, but he refused to give them to her, so she started walking down the street; Allen followed her, yelling. During this time, the Pattons

called Morgan. Morgan told them that Allen was out of control, and asked if the Pattons could come pick her up because she was walking and still wanted to meet them.

The Pattons drove toward Morgan's home and saw Morgan and Allen in the street in front of their house. Morgan tried to get into the Pattons' car, but Allen pulled her away, shoved her against the car, and threatened "you're not going to f'ing leave me." Patton got out of the car and told Allen to calm down and let Morgan go; Patton tried to pull Allen off of and away from Morgan. Allen replied, "I'll beat your a**," and pushed Patton; the two men engaged in a brief physical scuffle, and Allen fell to the ground. A few seconds later, Patton's wife saw Allen extend his arm and heard one gunshot. Patton said he had been shot, got in the driver's seat, and drove away.

As the Pattons drove away, Patton's wife called 911. She noticed the car veering off the road, so she reached her leg across Patton and stopped the car. An ambulance arrived, but Patton died soon after. A medical examiner determined that Patton died as a

result of bleeding from one gunshot wound to the chest.

Pursuant to a search warrant, a .22-caliber Derringer pistol and four .22-caliber bullets were recovered from Allen's home — the same caliber as a bullet found at the scene of the shooting. A firearms examiner examined the gun, testified that nine pounds of force was needed to pull the trigger, which is heavy for a single action firearm like a pistol, and suggested the gun was not fired by accidental discharge.

1. Allen does not challenge the sufficiency of the evidence. Nevertheless, as is our customary practice in murder cases, we have independently reviewed the record and conclude that the evidence was legally sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Allen was guilty of the crimes for which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979).

2. Allen argues that the court erred by admitting evidence of his behavior after the shooting in violation of OCGA § 24-4-404 (b) ("Rule 404 (b)"). The evidence at issue, introduced through Morgan's

4

testimony, showed the following: Morgan and Allen walked home after the shooting. Initially, Allen was not irate, but after entering the house, he started "fussing" with Morgan's brother. When police arrived, Allen was aggressive, visibly intoxicated, and would not comply with police demands until police aimed a Taser at him. The trial court admitted the testimony, finding that it was intrinsic to the charged offenses and thus outside the scope of Rule 404 (b). We agree.

We review a trial court's decision to admit evidence for an abuse of discretion. See *Booth v. State*, 301 Ga. 678, 682 (3) (801 SE2d 104) (2017). As we have explained before:

> The limitations and prohibition on "other acts" evidence set out in OCGA § 24-4-404 (b) do not apply to "intrinsic evidence." . . . Evidence is admissible as intrinsic evidence when it is (1) an uncharged offense arising from the same transaction or series of transactions as the charged offense; (2) necessary to complete the story of the crime; or (3) inextricably intertwined with the evidence regarding the charged offense.

*Williams v. State*, 302 Ga. 474, 485 (IV) (d) (807 SE2d 350) (2017) (citations and punctuation omitted).

Morgan's testimony concerning Allen's demeanor was inextricably intertwined with the evidence regarding the charged offense. The evidence, related to events immediately following the shooting and prior to Allen's arrest, was linked in time and circumstances with the charged crime; the events in question occurred within minutes of the shooting and in the immediate location of the shooting. The evidence was relevant to show Allen's state of mind following the shooting, particularly because Allen requested a jury charge on accident. Because Allen initially behaved calmly, then continued to show signs of anger, rather than regret, a reasonable juror could conclude that the evidence suggested that Allen lacked remorse, and that he did not accidentally shoot the victim.

Allen also argues that if the evidence was admissible under Rule 404 (b), notice was required. But Rule 404 (b) does not require notice when the evidence "is offered to prove the circumstances immediately surrounding the charged crime." OCGA § 24-4-404 (b). "Because this evidence was intrinsic to the crimes charged, it was

6

neither barred by Rule 404 (b) nor subject to the Rule's notice requirement." *Williams*, 302 Ga. at 487 (IV) (d). Thus, the trial court did not abuse its discretion in admitting Morgan's testimony concerning the events following the shooting.

3. Allen also argues that the trial court erred by admitting autopsy photographs into evidence in violation of OCGA § 24-4-403 ("Rule 403"), because the cause of Patton's death was not disputed, and the photographs were likely to inflame the passions of the jury. We disagree.

Allen cites *Thomas v. State,* 281 Ga. 550, 552 (2) (640 SE2d 255) (2007) for the proposition that post-autopsy photographs are admissible only when they show a material fact that became apparent solely because of the autopsy. That categorical rule was abrogated by the current Evidence Code, which applies because Allen's trial occurred after January 1, 2013. See *Venturino v. State*, 306 Ga. 391, 395-396 (2) (b) (830 SE2d 110) (2019).

Under the current Evidence Code, excluding relevant evidence under Rule 403 is "an extraordinary remedy that should be used

7

only sparingly." *Pike v. State*, 302 Ga. 795, 799 (3) (809 SE2d 756) (2018) (citation and punctuation omitted). Autopsy photographs may be relevant and probative to show the nature and location of a victim's injuries, even if the cause of death is not disputed. Id. at 799-800 (3); *Dailey v. State*, 297 Ga. 442, 444 (4) (774 SE2d 672) (2015).

Here, one pre-autopsy photograph of Patton's upper body was admitted during the medical examiner's testimony to show the jury precisely where Patton was shot and to explain to the jury the effect the bullet had in lacerating Patton's lung and liver. The photograph was not graphic and did not show any autopsy cuts. The trial court did not err by admitting it.

4. During the final jury charge, the trial court gave a pattern jury instruction on aggravated assault stating that "[a] firearm, when used as such, is a deadly weapon as a matter of law." Suggested Pattern Jury Instructions, Vol. II: Criminal Cases (2007), § 2.20.22. Allen argues that this jury instruction unconstitutionally invaded the province of the jury by substituting the court's judgment

for the jury's.

The jury has the constitutional duty to determine whether the State has proven all the elements of an offense beyond a reasonable doubt. Ga. Const. of 1983, Art. I, Sec. I, Par. XI (a). But it is well established that

> [a] firearm is a deadly weapon as a matter of law. A firearm pointed at a victim and reasonably appearing to the assault victim to be loaded is a deadly weapon as a matter of law, regardless of whether it is loaded and, under such a circumstance, the trial court does not err when it takes the issue of "deadliness" from the jury.

*State v. Nejad*, 286 Ga. 695, 700 (2) (690 SE2d 846) (2010) (citations omitted). A trial court therefore does not impose upon the jury's constitutional province by giving an instruction that a firearm, when used as such, is a deadly weapon as a matter of law. The instruction was properly given.

5. Although Allen does not raise the issue on appeal, we have identified a merger error in his sentencing. "When the only murder conviction is for felony murder and a defendant is convicted of both felony murder and the predicate felony of the felony murder charge,

9

the conviction for the predicate felony merges into the felony murder conviction." *Brown v. State,* 302 Ga. 813, 816 (3) (809 SE2d 742) (2018); OCGA § 16-1-7 (a) (1). Because the crime of aggravated assault by shooting Patton with a gun was the underlying felony for the felony murder conviction, it should have merged with the felony murder conviction for sentencing purposes. *Norris v. State,* 302 Ga. 802, 805 (III) (809 SE2d 752) (2018). Accordingly, we vacate Allen's conviction and sentence for aggravated assault.

*Judgment affirmed in part and vacated in part. All the Justices concur.*

DECIDED JANUARY 27, 2020.
Murder. Lee Superior Court. Before Judge Sizemore.
*Kevin Kwashnak,* for appellant.
*Lewis R. Lamb, District Attorney; Christopher M. Carr,*

*Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Elizabeth H. Brock, Assistant Attorney General*, for appellee.