314 Ga. 459
FINAL COPY


S22A0616.  ALBURY v. THE STATE.


WARREN, Justice.

Riki Ray Albury was convicted of malice murder and other crimes in connection with the stabbing death of Ronald Roach.[1]  On appeal, Albury contends that the trial court erred by failing to excuse two jurors for cause and by admitting a particular autopsy photograph into evidence, and that Albury's trial counsel provided

---

[1] The crimes occurred on June 28, 2018.  On October 2, 2018, a DeKalb County grand jury indicted Albury, Jared Kelvin Smith, and Kessiah Rowe for malice murder, felony murder, aggravated assault, possession of a knife during the commission of a felony, and theft by taking.  Albury's case was severed from Smith's.  Smith was tried in July 2019 and convicted of malice murder and theft by taking, and we affirmed his convictions in *Smith v. State*, 313 Ga. 584 (872 SE2d 262) (2022).  Albury was tried from September 20 to 26, 2019, and Rowe testified in exchange for dismissal of her charges.  The jury found Albury guilty on all counts.  On September 26, 2019, the trial court sentenced Albury to serve life in prison for malice murder and two probated terms of five years each for the knife charge and theft by taking to run consecutively to the murder sentence but concurrently to each other.  The felony murder count was vacated by operation of law, and the aggravated assault count was merged for sentencing purposes.  Through new counsel, Albury timely filed a motion for new trial on October 2, 2019, and amended it on June 14, 2021.  The trial court denied the amended motion on September 30, 2021, and Albury timely filed a notice of appeal on October 11, 2021.  The case was docketed in this Court to the April 2022 term and submitted for a decision on the briefs.

constitutionally ineffective assistance. Seeing no error, we affirm.

1. The evidence presented at Albury's trial showed the following. Roach's body was discovered on the floor of his bedroom on the morning of June 28, 2018. There was no indication of forced entry into his apartment, but there was blood in several locations inside, especially in Roach's bedroom where there were signs of a struggle. Roach's vehicle was missing. Neighbors who lived in the apartment below Roach's heard an argument, loud noises, and yelling upstairs at around 3:00 or 4:00 a.m. on the morning Roach was killed. They also heard the sound of people running outside the apartment, a car engine cranking, and a car driving away.

Evidence placed Albury in Roach's apartment on the night of the murder. Roach paid for rideshare services on the evening of June 27, 2018—including for a ride to a location near Roach's apartment for a man later identified as Albury. Prentiss Green visited Roach's apartment on the night of June 27, 2018, went into Roach's bedroom, saw two young men and a woman engaged in sexual activity, and left after 20 minutes. Green later identified the

2

two men as Albury and Jared Kelvin Smith from photographic lineups. A GBI forensic biologist testified that the one pair of underwear recovered at the scene of Roach's murder tested positive for DNA matching Roach, Albury, and Kessiah Rowe.

Rowe testified that on the night of Roach's murder, Smith sent an Uber to bring her to Roach's apartment, where she engaged in sexual activity with Smith and Albury while Roach sat nearby at his desk. Rowe left with Smith and Albury and went to a gas station, where there was an "altercation" with some other men and where she saw Smith pull out a knife. Rowe then went back to Roach's apartment with Smith and Albury. A heated argument ensued, and Smith gave Albury a "confirmation look" and struck Roach three times with a closed fist on the back of Roach's neck while Roach was sitting at his dining room table. Due to the type of motion Smith made, Rowe believed that Smith was stabbing Roach. Roach ran to his bedroom, but Smith forced his way inside. Rowe heard fighting and walked to the bedroom. She saw blood on the bed and observed Smith attacking Roach on one side of the bed and Albury watching

3

from the other side of the bed. Rowe left the apartment. After 15 to 20 minutes, Smith, Albury, and Rowe left in Roach's car. While in the car, Albury said that "we left" Roach's face "black and blue" and that "we could have stopped at any time." Smith and Albury changed clothes, and Smith later dropped off Albury and Rowe at a motel.

Dr. Christy Cunningham, a DeKalb County medical examiner who performed Roach's autopsy, testified that Roach's cause of death was multiple stab wounds; she identified 38 stab wounds across Roach's body that were consistent with wounds made by a single knife or multiple knives. She also identified blunt-force trauma injuries on Roach's head and face.

2. Albury contends that the trial court erred by failing to excuse two jurors because, as they explained during voir dire, they had certain scheduling conflicts during the week of trial. The trial transcript does not demonstrate that Albury made any objection or motion to strike the two jurors at issue for cause. And Albury does not claim that he did so or that some portion of the transcript

4

showing such an objection or motion is missing. Accordingly, this issue has not been preserved for ordinary appellate review. See *Hill v. State*, 310 Ga. 180, 186 (850 SE2d 110) (2020) ("Because Hill did not make a request to strike the juror for cause, the issue was waived for ordinary appellate review."); *Veal v. State*, 301 Ga. 161, 163 (800 SE2d 325) (2017) ("Veal concedes that he did not make a request to strike the jurors. Therefore, the issue was waived for direct review."). See also *Thompson v. State*, 294 Ga. 693, 700-701 (755 SE2d 713) (2014) (Nahmias, J., concurring specially) (noting lack of legal authority imposing any duty on trial courts to excuse jurors for cause sua sponte). Moreover, Albury does not claim that the trial court committed plain error, and in any event "plain error review is not available for this issue." *Hill*, 310 Ga. at 186.

3. Albury also contends that the trial court erred by admitting into evidence a post-incision autopsy photograph. He argues that the trial court never properly subjected the photograph to the balancing test required under OCGA § 24-4-403 ("Rule 403") and that a thorough balancing test would have resulted in exclusion of

the photograph. We disagree.

Under our current Evidence Code, "we generally evaluate the admissibility of autopsy photographs under OCGA §§ 24-4-401, 24-4-402, and 24-4-403 ('Rule 401, 402, and 403'), relying on 'our cases decided under the new Evidence Code, and also looking to federal case law for guidance.'" *Mitchell v. State*, 307 Ga. 855, 863 (838 SE2d 847) (2020) (quoting *Venturino v. State*, 306 Ga. 391, 396 (830 SE2d 110) (2019)). Rule 401 defines "relevant evidence broadly," *State v. Orr*, 305 Ga. 729, 736 (827 SE2d 892) (2019), as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." OCGA § 24-4-401. Rule 402 provides that "[a]ll relevant evidence shall be admissible, except as limited by constitutional requirements or as otherwise provided by law or by other rules, as prescribed pursuant to constitutional or statutory authority, applicable in the court in which the matter is pending. Evidence which is not relevant shall not be admissible." OCGA § 24-4-402. And under Rule 403,

6

"[r]elevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." OCGA § 24-4-403. "Decisions regarding relevance are committed to the sound discretion of the trial court, and the exclusion of relevant evidence under Rule 403 is an extraordinary remedy that should be used only sparingly." *Venturino*, 306 Ga. at 395 (citations and punctuation omitted). "Autopsy photographs may be relevant and probative to show the nature and location of a victim's injuries, even if the cause of death is not disputed." *Allen v. State*, 307 Ga. 707, 710 (838 SE2d 301) (2020).

Albury filed a pre-trial motion in limine to exclude from evidence a post-incision autopsy photograph of an injury to Roach's head after the skin of his scalp and face had been peeled back. In the motion, Albury argued that the photograph did not depict a fatal injury, was not required to assist the jury's understanding of the circumstances surrounding Roach's death, and could be described

7

effectively with the medical examiner's diagram of the injuries, as it was at co-indictee Smith's trial. When the motion in limine was heard at trial, the State provided the trial court with a copy of this Court's opinion in *Venturino* and referred to that decision's recognition of "the balancing test in 403." Both parties extensively argued about the relevance of the photograph, including the weight of its probative value and its danger of unfair prejudice. The trial court said that it did not see the photograph as "that gory," ruled that it would be relevant "based on the law being cited by the State," and admitted it over Albury's objection.

Although the trial court did not cite the text of Rule 403 in its ruling, the trial transcript shows that both parties argued the text of the rule, that the trial court discussed the photograph's relevance and potential prejudice, and that it based its ruling on the case the State cited, *Venturino*, 306 Ga. at 395-396. In so doing, the trial court implicitly conducted the proper analysis under Rule 403, even though it did not expressly reference that rule. See *Johnson v. State*, 312 Ga. 481, 494 (863 SE2d 137) (2021) ("[W]e see no abuse of

discretion in the trial court's *implicit* conclusion that the probative value of [certain] evidence was not substantially outweighed by its prejudicial effect.") (emphasis supplied).

We next consider whether the trial court's ruling amounted to an abuse of its discretion and conclude that it did not. In that regard, Albury describes the photograph at issue as "gory," "graphic," "ghastly," and "gruesome," and argues that it neither showed Roach's cause of death nor supported the State's theory that more than one person attacked Roach. However, Dr. Cunningham testified that because of Roach's thick hair, she could see his head injury only after pulling back his scalp. The photograph shown to the jury thus depicted the only way that Roach's head injury was visible. Moreover, the wound depicted in that photograph differed from numerous other injuries that were consistent with evidence of Smith's participation in the crimes by striking Roach with Smith's knife and perhaps his fist. Because Dr. Cunningham testified that the particular injury depicted in the photograph was caused by a blunt force consistent with a person striking Roach's head with a

9

heavy object—and not with a fist or a sharp object like a knife—the photograph had a tendency to make it "more probable" that someone other than Smith participated in the crimes—a fact of great consequence in Albury's trial. See Rule 401. Accordingly, although the photograph at issue could be characterized as somewhat gruesome, it nevertheless had significant probative value in showing the nature of Roach's various injuries and supported the theory that Albury (and not just Smith) participated in the attack— particularly in light of Rowe's testimony that Albury stayed with Smith during the attack and later admitted his participation in the attack.

Based on the foregoing, we cannot say that the trial court abused its discretion when it concluded that the photograph was relevant and implicitly ruled under Rule 403 that the photograph's probative value was not substantially outweighed by the danger of unfair prejudice. See *Allen*, 307 Ga. at 710; *Moore v. State*, 307 Ga. 290, 295 (835 SE2d 610) (2019) (holding that the trial court did not abuse its discretion in admitting post-incision autopsy photographs that "were relevant to show the nature and location of the victim's

10

injuries, which corroborated the State's evidence of the circumstances of the killing") (citation and punctuation omitted); *Venturino*, 306 Ga. at 395-396 (disavowing, in cases governed by our current Evidence Code, application of the former rule that a post-incision autopsy photograph is not admissible "unless necessary to show some material fact which becomes apparent only because of the autopsy," and holding that trial court did not abuse its discretion in admitting such a photograph "[a]lthough [it] was relatively gruesome") (citation and punctuation omitted).

4. Albury contends that he was denied the effective assistance of counsel in two ways. We conclude that Albury has failed to show that his trial counsel was constitutionally ineffective.

To prevail on a claim of ineffective assistance of counsel, a defendant generally must show that counsel's performance was deficient and that the deficient performance resulted in prejudice to the defendant. See *Strickland v. Washington*, 466 U.S. 668, 687-695 (104 SCt 2052, 80 LE2d 674) (1984); *Wesley v. State*, 286 Ga. 355, 356 (689 SE2d 280) (2010). To satisfy the deficiency prong, a

11

defendant must demonstrate that his attorney "performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms." *Romer v. State*, 293 Ga. 339, 344 (745 SE2d 637) (2013). See also *Strickland*, 466 U.S. at 687-688. This requires a defendant to overcome the "strong presumption" that trial counsel's performance was adequate. *Marshall v. State*, 297 Ga. 445, 448 (774 SE2d 675) (2015) (citation and punctuation omitted). To carry the burden of overcoming this presumption, a defendant "must show that no reasonable lawyer would have done what his lawyer did, or would have failed to do what his lawyer did not." *Davis v. State*, 299 Ga. 180, 183 (787 SE2d 221) (2016). "In particular, decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so patently unreasonable that no competent attorney would have followed such a course." Id. (citation and punctuation omitted). To satisfy the prejudice prong, a defendant must establish a reasonable probability that, in the absence of counsel's deficient performance, the result of the trial would have been different. See

*Strickland*, 466 U.S. at 694. "If an appellant fails to meet his or her burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong." *Lawrence v. State*, 286 Ga. 533, 533-534 (690 SE2d 801) (2010).

(a) Albury claims that his trial counsel was ineffective because, after Juror 28 became sick while the post-incision autopsy photograph was displayed to the jury, counsel failed to press the trial court to question the other jurors and ascertain any resulting bias.[2] While the photograph was displayed and Dr. Cunningham was describing the injury depicted, Juror 28 said: "I might pass out." After a 15-minute recess, the trial court explained that the juror had

---

[2] Albury also raises this issue apart from his claim of ineffective assistance, separately asserting that the trial court erred by failing to question the other jurors. As recounted below, however, trial counsel did not express any concern, let alone objection, after Juror 28 became sick. Accordingly, Albury has waived ordinary appellate review of the trial court's failure to question the other jurors. See *Davis v. State*, 290 Ga. 584, 587-588 (723 SE2d 431) (2012) (holding that, when one juror asked for a break during the medical examiner's testimony and then became unconscious in the jury room, "appellant did not posit any concern or objection to the trial court's handling of the interruption" and therefore had waived appellate review of the trial court's failure to poll the jury to determine the other jurors' continued impartiality). Albury does not claim that the trial court committed plain error, and indeed such review is not available because there is no specific statutory provision for plain-error review of this type of issue. See *Hill*, 310 Ga. at 186.

tried to stand up, "looked like he fell down on the floor, apparently threw up," and was assisted by a court deputy and by medical personnel. The court then decided to release the jurors for the day and ask them in the morning if what happened would affect their ability to be fair and impartial. Counsel for both parties stated "no objection." The trial court raised the possibility of replacing Juror 28 with an alternate, and defense counsel said she "would like to wait and make that decision after the questioning, if he says he is fine." When questioned in the morning, Juror 28 said that he felt "much better than yesterday," that he was able to continue as a fair and impartial juror, that "nerves" caused his sickness, and that he was "checked . . . out" and everything was fine. The parties had no questions for Juror 28, and the other jurors were not questioned either generally or individually. The trial court briefly explained to the jury that Juror 28 was able to continue, and the examination of Dr. Cunningham proceeded without objection.

Pretermitting whether counsel performed deficiently by not requesting that the other jurors be questioned, Albury has failed to

14

offer any evidence to show that, had the jurors been questioned, there is a reasonable probability that the outcome of the trial would have been different. See *Jones v. State*, 282 Ga. 47, 50 (644 SE2d 853) (2007) ("Even assuming, arguendo, that counsel performed deficiently by failing to make inquiry into whether the juror's behavior (clutching her stomach and leaving the courtroom with the bailiff) had any impact on the rest of the panel, appellant failed to adduce any evidence to show that he was prejudiced by the lack of inquiry.").

(b) Albury also claims that his trial counsel was ineffective for failing to request a jury charge on voluntary manslaughter and failing to object when the trial court, while working from the jury charge given at Smith's trial, removed a charge on voluntary manslaughter. Prior to Smith's trial, Albury turned down a plea offer of 15 years in prison for voluntary manslaughter in exchange for his truthful testimony. During the charge conference, the trial court noted that neither party had requested a charge on voluntary manslaughter, so that charge would not be included in the charges

15

given to the jury; neither party objected. At the hearing on the motion for new trial, Albury's trial counsel testified that she met frequently with Albury in preparation for trial and thoroughly explained the plea offer, including the difference between murder and voluntary manslaughter and what that would mean for sentencing. Counsel further testified that she and Albury discussed whether to ask for an instruction on voluntary manslaughter; that Albury wanted to argue only that he was not guilty; that her trial strategy was to argue that Albury was present but was not a party to the crimes; that both of them were concerned that the jury might reach a compromise verdict of guilt on voluntary manslaughter, resulting in a worse sentence than was offered prior to trial; and that she and Albury together decided not to request a charge on voluntary manslaughter. In the order denying Albury's motion for new trial, the trial court relied on counsel's testimony, recognized that pursuing an all-or-nothing defense is a generally permissible strategy, and found that Albury explicitly agreed to that strategy.

Albury argues that counsel could have foreseen the guilty

16

verdict for malice murder, that no valid trial strategy would deprive the jury of an alternative to murder and its mandatory life sentence, that a compromise verdict would have been better than the resulting guilty verdict, and that despite counsel's testimony, Albury did not understand or sanction the trial strategy because he has little knowledge of the criminal justice system and relied heavily on counsel's advice.

Contrary to these arguments, and assuming that the evidence presented at trial authorized an instruction on voluntary manslaughter, it was not a patently unreasonable strategy for trial counsel to assert, after consultation with Albury, that he did not participate in the crimes and to pursue an all-or-nothing defense. See *Outlaw v. State*, 311 Ga. 396, 406 (858 SE2d 63) (2021) ("Decisions about which defenses to present and which jury charges to request are classic matters of trial strategy, and pursuit of an all-or-nothing defense is generally a permissible strategy.") (citation and punctuation omitted); *Floyd v. State*, 307 Ga. 789, 802 (837 SE2d 790) (2020) ("Floyd's trial strategy was to assert that he had

17

no involvement in Jackson's death. That strategy was reasonable. Moreover, in the execution of such a reasonable strategy, a trial counsel's decision not to request jury instructions on a lesser offense in order to pursue an 'all-or-nothing defense' is itself a matter of trial strategy."); *Szorcsik v. State*, 303 Ga. 737, 742-743 (814 SE2d 708) (2018) ("Counsel was free to pursue an all-or-nothing strategy . . . after consulting with [the defendant], and the failure to request a jury charge on voluntary manslaughter under such circumstances does not amount to deficient performance. . . . Indeed, while other counsel, had they represented appellant, may have exercised different judgment, the fact that the trial counsel chose to try the case in the manner in which it was tried and made certain difficult decisions regarding the defense tactics to be employed with which appellant and his present counsel now disagree, does not require a finding that the representation below was so inadequate as to amount to a denial of effective assistance of counsel.") (citation and punctuation omitted). As a result, Albury has not established that his trial counsel performed deficiently in this regard, and this claim

of ineffective assistance of counsel fails.  See *Outlaw*, 311 Ga. at 406; *Floyd*, 307 Ga. at 802.

*Judgment affirmed.  All the Justices concur.*

Decided August 23, 2022.

Murder. DeKalb Superior Court. Before Judge Parker-Smith.

*The Abt Law Firm, E. Jay Abt; The Hingerty Law Firm, Katie A. H. Borodin*, for appellant.

*Sherry Boston, District Attorney, Jason M. Rea, Deborah D. Wellborn, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Michael A. Oldham, Assistant Attorney General*, for appellee.