NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: September 19, 2023

S23A0433. SALVESEN v. THE STATE.

BETHEL, Justice.

Walter G. Salvesen, III, was convicted of malice murder and other crimes in connection with the shooting death of Johnathan Martin.[1] On appeal, Salvesen contends that: (1) the trial court admitted unduly prejudicial photographs from Martin's autopsy and

---

[1] The crimes occurred sometime between mid-June and mid-August, 2015. On December 1, 2015, a Richmond County grand jury indicted Salvesen for malice murder (Count 1), felony murder predicated on the aggravated assault of Martin (Count 2), and possession of a firearm during the commission of a crime (Count 3). At a trial held from August 14 to August 16, 2017, a jury found Salvesen guilty on all counts. The trial court sentenced Salvesen to serve life in prison without parole on Count 1 and five consecutive years in prison on Count 3. The trial court purported to merge the felony murder count (Count 2) into the malice murder count (Count 1), but the sentence with regard to Count 2 was actually vacated by operation of law. See *Heade v. State*, 312 Ga. 19, 29-30 (6) (860 SE2d 509) (2021).

Salvesen filed a timely motion for new trial, which he amended twice through new counsel. Following a hearing on June 28, 2022, the trial court denied Salvesen's amended motion on November 22, 2022. Salvesen then filed a timely notice of appeal, and his case was docketed to the April 2023 term of this Court and submitted for a decision on the briefs.

the scene where Martin's body was found; (2) the trial court erred by failing to recharge the jury on the lesser offenses of voluntary and involuntary manslaughter when it recharged on malice murder and felony murder; and (3) trial counsel rendered ineffective assistance to the extent the foregoing alleged errors were not preserved for appellate review.

For reasons more fully explained below, these claims fail because: (1) the trial court did not abuse its discretion in admitting the photographs; (2) the trial court acted within its discretion in solely recharging the jury on the definitions it requested and not the lesser offenses; and (3) Salvesen has not demonstrated that his trial counsel was deficient. We therefore affirm Salvesen's convictions.

1. The evidence presented at trial showed as follows. Salvesen and Martin were friends who occasionally experienced "falling outs." For example, in 2014, Martin brandished a firearm at Salvesen and threatened him and his family because Martin was under the impression that Salvesen "had s[n]itched on him for something[.]" Despite this turmoil, the two maintained their friendship.

2

Sometime in 2015, Martin was kicked out of his parents' house, and Salvesen offered to let Martin live with him in his mobile home. At some point in June 2015, Salvesen began moving out of the home. Salvesen's mother testified that she went to the home to assist Salvesen and discovered Martin hiding behind a shower curtain in the bathroom. Salvesen's mother told Martin that he was not supposed to be at the residence. Martin was asked to leave.

Salvesen testified that, a day later, Martin returned to the home, and the two men got into a "long argument" that "lasted over an hour[.]" Salvesen claimed that he attempted to "deescalate" the situation, but Martin continued arguing and eventually began making threats against Salvesen and his family. Salvesen testified that Martin became agitated, threatened to "bust [him] with the forty," and looked toward a firearm that was laying on a nearby table. According to Salvesen, he "didn't know whether [the gun] was loaded or not" but was afraid that Martin would get the gun first. As Martin "went to go reach" for the gun, Salvesen grabbed the gun and started firing. Salvesen believed the first shot struck Martin in the

3

chest, but he kept firing because Martin was still moving towards him. Salvesen fired a total of five rounds. Three bullets hit a wall. The other two struck Martin, one in the head and the other in the chest, one or both of which resulted in his death.[2] Salvesen testified that, after the shooting, he was "freaking out" and "didn't know what to do," so he called his sister, who offered to help the following day.

According to Salvesen, when his sister arrived with her boyfriend's truck, Salvesen wrapped Martin's body in a tarp, and he and his sister loaded Martin's body into the truck. They then drove to Burke County and dumped Martin's body in the woods. Salvesen testified that, at some point, he plugged the bullet holes in the wall,[3] cleaned up the blood, and disposed of the gun. Salvesen's sister's boyfriend testified that, in June 2015, he visited Salvesen's house, noticed a "real bad smell," and saw Salvesen shampooing the

---

[2] Due to the decomposed nature of the body when it was recovered, including deterioration of the internal organs, the medical examiner was unable to determine which injury was the cause of Martin's death.

[3] Salvesen's testimony indicated that his sister helped plug the bullet holes. Salvesen's sister disputed that allegation. She was not charged for her actions and was a witness for the State at trial.

carpets.

In August 2015, a Burke County landowner discovered what was later identified as Martin's body wrapped in tarp and resting on a moving dolly.[4] Sometime later, Salvesen's sister told their mother about what Salvesen had done, and Salvesen's mother contacted law enforcement. At trial, Salvesen asserted that he acted in self-defense, but the jury found him guilty of all counts.

2. Salvesen contends that the trial court abused its discretion by admitting into evidence, over his objection, photographs taken by a crime scene investigator at the location where Martin's body was discovered and photographs taken during Martin's autopsy.[5] The record reflects that the photographs at issue were admitted in connection with the testimony of the medical examiner and a crime scene investigator. These photographs generally depict Martin's

---

[4] Salvesen's father testified that the moving dolly was his and that, when he asked Salvesen about the dolly, Salvesen claimed that it was at his sister's house.

[5] Salvesen specifically takes issue with State's Exhibits 14, 15, and 17-47. Because State's Exhibit 34 was neither tendered nor admitted, however, our analysis of this issue does not address Exhibit 34.

wounds, as shown at the crime scene where Martin's body was recovered and during the autopsy; Martin's body as it was received by the medical examiner; and Martin's body as shown at the crime scene where it was recovered.[6] While Salvesen concedes that this photographic evidence was "technically relevant" to show that Martin died, he argues that the photographs should have been excluded under OCGA § 24-4-403 because, he says, they were cumulative of other evidence given that he did not dispute the cause or fact of Martin's death and because they were gruesome. These arguments are unavailing.

> The admissibility of crime scene and victim injury and autopsy photographs is generally governed by OCGA § 24-4-401, which defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence"; by OCGA § 24-4-402, which provides that "all relevant evidence shall be admissible, except as

---

[6] Based on some ambiguous concessions at trial, there is some question as to whether Salvesen preserved his objections to the admission of the photographs showing Martin's wounds, Martin's wrapped body at the scene and as it was received by the medical examiner, and the materials wrapped around Martin's body were preserved. But we need not resolve this question because, as discussed below, the trial court acted well within its discretion in admitting these particular photographs.

6

limited by constitutional requirements or as otherwise provided by law or by other rules"; and by OCGA § 24-4-403 ("Rule 403"), which provides that "relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

(Punctuation omitted.) *Perez v. State*, 309 Ga. 687, 694-695 (3) (848 SE2d 395) (2020). In reviewing the admission of evidence "under Rule 403, we look at the evidence in a light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact." (Citation and punctuation omitted.) *Favors v. State*, 305 Ga. 366, 368-369 (2) (b) (825 SE2d 164) (2019). And it is well settled that "[t]he application of Rule 403 is a matter committed principally to the discretion of the trial courts, and the exclusion of evidence under Rule 403 is an extraordinary remedy which should be used only sparingly." (Citation and punctuation omitted.) Id. at 369 (2) (b).

Because Salvesen concedes that the photographs were relevant, the only question before us is whether their probative

value was substantially outweighed by their prejudicial effect. Salvesen argues, as he did below, that the photographs were gruesome and needlessly cumulative because he admitted shooting Martin such that cause of death was not at issue. But because "the State was not required to stipulate to the cause of death and the circumstances surrounding the murder [ ]," this argument misses the mark. *Morgan v. State*, 307 Ga. 889, 896 (3) (b) (838 SE2d 878) (2020). Indeed, "a criminal defendant may not stipulate or admit his way out of the full evidentiary force of the case as the State chooses to present it." (Citation and punctuation omitted.) Id. And the mere fact that the photographs were gruesome does not, as a general matter, render them inadmissible under Rule 403. See *Plez v. State*, 300 Ga. 505, 508 (3) (796 SE2d 704) (2017) ("[P]hotographic evidence that fairly and accurately depicts a body or crime scene and is offered for a relevant purpose is not generally inadmissible under Rule 403 merely because it is gruesome.").

First, the photographs showing Martin's wounds were not unduly prejudicial. These photographs depict the nature and

8

location of Martin's injuries and corroborated the State's evidence regarding the circumstances of the killing. Moreover, the wound pictures were useful for the jury to understand why the medical examiner was unable to determine which gunshot wound caused Martin's death. See *Allen v. State*, 307 Ga. 707, 710 (3) (838 SE2d 301) (2020) ("Autopsy photographs may be relevant and probative to show the nature and location of a victim's injuries, even if the cause of death is not disputed."); *Albury v. State*, 314 Ga. 459, 462 (3) (877 SE2d 548) (2022) (no abuse of discretion in admitting post-incision autopsy photograph showing an injury to the victim's head after the skin of his scalp and face had been peeled back to show the nature of the victim's injuries in support of the State's theory that the appellant participated in the crimes); *Flowers v. State*, 307 Ga. 618, 624 (3) (837 SE2d 824) (2020) (admission of photograph of victim's brain not an abuse of discretion where it was relevant to show an injury's severity). Accordingly, Salvesen has failed to show that these photographs should have been excluded under Rule 403 and that the trial court abused its broad discretion in admitting them.

See *Favors*, 305 Ga. at 369 (2) (b); *Evans v. State*, 306 Ga. 403, 412 (2) (c) (831 SE2d 818) (2019) ("a trial court has broad discretion in balancing the probative and prejudicial nature of crime scene photos").

We turn next to consider several photographs from the medical examiner's office and the crime scene. These photographs show the material wrapped around Martin's body, the wrapped body itself, the area where Martin's body was discovered, and evidence at the scene. As these photographs were "neither especially gory nor gruesome," *Lanier v. State*, 310 Ga. 520, 527 (4) (852 SE2d 509) (2020), we see no substantial risk of unfair prejudice flowing from any of these pictures. Salvesen thus has failed to show that these photographs should have been excluded under Rule 403 or that the trial court abused its broad discretion in admitting them.

The remaining photographs, which show the unwrapping of Martin's body at the scene in greater detail and the condition of Martin's body as it was received by the medical examiner, include images of insect activity and depict the biological processes

associated with decomposition. Many of these pictures can be fairly described as gruesome or gory. And the emotional response some jurors may have experienced when confronted by such images carries some risk of unfair prejudice. But, as mentioned above, Rule 403 requires the trial court to determine whether the risk of unfair prejudice "substantially" outweighs the probative value of the evidence. See *Anglin v. State*, 302 Ga. 333, 337 (806 SE2d 573) (2017) ("[I]n a criminal trial, inculpatory evidence is inherently prejudicial; it is only when unfair prejudice *substantially* outweighs probative value that the rule permits exclusion." (citation and punctuation omitted; emphasis supplied)). And though some of us could have reached a different conclusion about the admissibility of these photographs had the inquiry been put to us in the first instance, we cannot say that the trial court abused its broad discretion by finding that the pictures' probative value was not substantially outweighed by any unfair prejudice.

Here, the State was required to disprove Salvesen's claim of self-defense, and its need for evidence probative on that question

11

was heightened in light of Salvesen's testimony that Martin was the aggressor. These photographs, which provided a concrete depiction of Salvesen's considerable efforts to conceal his act of shooting and killing Martin, rebutted Salvesen's claim of self-defense by allowing the jury to infer that Salvesen "believed he had done something wrong." *Bannister v. State*, 306 Ga. 289, 300 (5) (a) (830 SE2d 79) (2019). See also *Early v. State*, 313 Ga. 667, 671 (2) (b) (872 SE2d 705) (2022). Indeed, these photographs were probative of Salvesen's guilt. See *Richardson v. State*, 308 Ga. 70, 72 (3) (838 SE2d 759) (2020) (evidence of appellant's "attempt to conceal his involvement in the crimes was evidence of his guilt"); *State v. Orr*, 305 Ga. 729, 741 (4) (a) (827 SE2d 892) (2019) ("[I]t is today universally conceded that the fact of an accused's . . . concealment . . . and related conduct is admissible as evidence of consciousness of guilt, and thus of guilt itself." (citation and punctuation omitted)). Thus, while these photographs carried some risk of unfair prejudice, we cannot say, under the circumstances present here, that the trial court abused its broad discretion in finding that the probative value of the challenged

photographs was not substantially outweighed by the risk of unfair prejudice. See *Favors*, 305 Ga. 369 (2) (b); *Evans*, 306 Ga. at 412 (2) (c). Accordingly, this enumeration of error fails.

3. Salvesen argues next that the trial court plainly erred when it failed to recharge the jury on the lesser offenses of voluntary manslaughter and involuntary manslaughter when recharging on malice murder and felony murder. We disagree.

The record shows that the trial court charged the jury on malice murder and felony murder, as well as the lesser offenses of voluntary and involuntary manslaughter.[7] During deliberations, the jury submitted a note asking the trial court to "define (1) malice murder [and] (2) felony murder[.]" The trial court reviewed the note with the State and Salvesen. Neither the State nor Salvesen opposed a recharge on malice murder and felony murder, and Salvesen did not ask the trial court to recharge the jury on voluntary manslaughter or involuntary manslaughter, either before or after

---

[7] We express no opinion as to whether the evidence in this case supported jury charges for voluntary or involuntary manslaughter. Cf. *Martin v. State*, 306 Ga. 538, 545-546 (5) (832 SE2d 402) (2019).

the trial court recharged the jury.[8] The court subsequently

reinstructed the jury on both malice murder and felony murder.

As the State correctly points out,

> [a] trial court has a duty to recharge the jury on issues for which the jury requests a recharge. As a general matter, however, where no such request has been made, the need, breadth, and formation of additional jury instructions are left to the sound discretion of the trial court.

*Barnes v. State*, 305 Ga. 18, 23 (3) (823 SE2d 302) (2019). Here,

beyond the recharge on malice murder and felony murder, which the

jury requested by virtue of its note to the court asking for the

definitions of those crimes, the extent of any further recharge was

within the court's discretion. See id. Indeed, the jury's note did not

mention, much less request the definitions for, voluntary

manslaughter or involuntary manslaughter. It thus was "within the

court's discretion whether to recharge the jury in full or only upon

the point or points requested by the jury," and we cannot say that

---

[8] Salvesen acknowledges that he made no objection to the recharge and argues for plain error review. But we need not decide whether plain error review applies in such circumstances because we conclude that there was no error, plain or otherwise.

14

the trial court abused its discretion "in limiting the recharge to the point[s] requested by the jury." (Punctuation omitted.) Id. at 23 (3). See also *Dozier v. State*, 306 Ga. 29, 32-33 (3) (829 SE2d 131) (2019) ("[O]ur case law contains no general mandate requiring trial courts, when responding to a jury's request for a recharge on a particular issue, to also recharge on all principles asserted in connection with that issue."); *Sampson v. State*, 279 Ga. 8, 10 (5) (608 SE2d 621) (2005) (where the jury requested the legal definitions of murder, felony murder, aggravated assault, and conspiracy, "it was within the trial court's discretion to limit the scope of the recharge to issues pertinent to the jury's request"); *Salahuddin v. State*, 277 Ga. 561, 564-565 (4) (592 SE2d 410) (2004) ("[W]here the jury requests further instructions upon a particular phase of the case, the court in its discretion may recharge them in full, or only upon the point or points requested." (punctuation and emphasis omitted)). Accordingly, the trial court acted within its discretion, and Salvesen cannot show any error – let alone plain error. This enumeration therefore fails. See *Jackson v. State*, 306 Ga. 475, 479 (3) (831 SE2d

15

755) (2019) (no plain error where the trial court acted within its discretion in recharging the jury).

4. Finally, Salvesen argues that trial counsel was ineffective to the extent that he failed to preserve for ordinary appellate review objections to the admission of the photographs or to the trial court's failure to recharge the jury on the lesser offenses. We disagree.

To succeed on a claim of ineffective assistance, a defendant must establish both that his counsel's performance was deficient and that he was prejudiced as a result of that deficient performance. See *Washington v. State*, 313 Ga. 771, 773 (3) (873 SE2d 132) (2022) (citing *Strickland v. Washington*, 466 U. S. 668, 687 (104 SCt 2052, 80 LE2d 674) (1984)). "If [a defendant] fails to make a sufficient showing on one part of the *Strickland* test, we need not address the other part." Id.

Here, trial counsel did object to the admission of the photographs at issue and obtained a ruling with respect to all of them. Thus, Salvesen fails to show any deficiency in this respect. See *Hyden v. State*, 308 Ga. 218, 227 (4) (839 SE2d 506) (2020)

(rejecting ineffective assistance claim based on purported failure to preserve errors where trial counsel properly preserved his argument by making a timely objection below). Moreover, to the extent Salvesen claims deficiency with respect to the alleged concession related to some unspecified portion of the State's exhibits, this claim fails because we have concluded that the admission of these exhibits was not error, and Salvesen cannot base his ineffectiveness claim on a failure to preserve a meritless argument. See *Walker v. State*, 306 Ga. 637, 645 (2) (b) (832 SE2d 783) (2019) ("[T]he failure to make a meritless objection is not deficient performance.").

Finally, as discussed in Division 3, the trial court did not err by recharging the jury only on the points requested. Again, any objection on these grounds would have been meritless, and "[d]eficient performance is not shown by counsel's failure to raise a meritless objection." *Smith v. State*, 300 Ga. 532, 536-537 (3) (b) (796 SE2d 671) (2017). Accordingly, his claim of ineffective assistance on this ground fails, as well.

*Judgment affirmed. All the Justices concur.*

17