**NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.**

In the Supreme Court of Georgia

Decided: September 16, 2025

S25A0826.  PRIEST v. THE STATE.

COLVIN, Justice.

On October 21, 2024, Appellant Julius Cerron Priest pleaded guilty to felony murder for the shooting death of Mark Frasier.[1,2] On

---

[1] We note that the victim's last name is spelled "Frazier" in the indictment, but that the prosecutor for the State indicated that his name is spelled "Frasier" during Appellant's plea hearing.

[2] The shooting occurred on January 31, 2021, and Frasier died in December 2021. On August 29, 2022, a Clayton County grand jury issued an eight-count indictment against Appellant and co-indictee LaTonya Moore. The indictment charged Appellant and Moore individually and as parties to a crime with malice murder (Count 1), felony murder predicated on aggravated assault (Count 2), aggravated assault (Count 3), and felony murder predicated on the possession of a firearm by a convicted felon (Count 4). Appellant was not charged in Count 5 but was charged with possession of a firearm by a convicted felon (Count 6), possession of a firearm by a convicted felon during a felony, namely, murder (Count 7), and possession of a firearm by a convicted felon during a felony, namely, aggravated assault (Count 8). After initially pleading not guilty on February 3, 2023, Appellant entered a negotiated guilty plea to felony murder on October 21, 2024.

The trial court sentenced Appellant to life in prison for felony murder (Count 2) The court then merged Count 3 (aggravated assault) into Count 2 for sentencing purposes. Though the trial court purported to merge Appellant's other felony murder count (Count 4) with the felony murder charged in Count

appeal, Appellant contends that the trial court erred by accepting his plea in two ways. First, Appellant argues that the trial court violated Uniform Superior Court Rule 33.9 ("USCR 33.9") by accepting his plea upon an insufficient factual basis. Second, Appellant argues that the trial court "forced" him to waive his right to withdraw his plea prior to sentencing by improperly conditioning its acceptance of his plea on such a waiver. As explained below, both of these arguments fail. We accordingly affirm Appellant's conviction and sentence.

1. As relevant to his plea, Appellant and Moore were charged individually and as parties to a crime with felony murder predicated on aggravated assault with a deadly weapon. Specifically, the indictment alleged that on January 31, 2021, they caused Frasier's death by shooting him with a firearm in Clayton County.

---

2, Count 4 was actually vacated by operation of law. See *Noel v. State*, 297 Ga. 698, 700 (2015) ("[A] defendant found guilty of the felony murder of the same victim through the commission of more than one felony may only be sentenced on one felony murder charge, and the remaining felony murder charges stand vacated by operation of law."). Appellant's remaining charges were nol prossed. Appellant filed a timely notice of appeal directed to this Court. The appeal was docketed to this Court's April 2025 term and submitted for a decision on the briefs.

(a) At Appellant's plea hearing, the prosecuting attorney proffered the following factual basis for Appellant's charges. On January 31, 2021, Frasier and his brother James Frasier ("James") were at a motel in Clayton County where people were known to buy, sell, and use drugs. James and two other witnesses overheard Appellant get into a verbal altercation with Frasier in the motel's parking lot after Appellant found Frasier in Appellant's car with a woman.[3] At least two of the witnesses then saw Frasier get out of Appellant's car, at which point the fight turned physical. These witnesses heard Appellant direct Moore to "Pop that n****r," and Moore then got out of a different vehicle and shot Frasier. Frasier was hospitalized with three gunshot wounds to his left leg, and he died nearly a year later from resulting complications.

(b) As part of Appellant's plea, he submitted a form entitled "Plea of Guilty (Nolo Contendere) Acknowledgment and Waiver of Rights" (Appellant's "waiver form"). During the plea hearing, the

---

[3] The State represented that the evidence remains unclear as to what Frasier and the woman were doing in Appellant's car.

3

trial court engaged in a colloquy with Appellant about his plea and his waiver form, which contained 43 numbered prompts concerning his rights, his capacity to understand them, and his waiver thereof. During the colloquy, Appellant indicated that he understood each of the 43 prompts on the waiver form, except for number 39, which asked whether Appellant understood and waived his "absolute right to withdraw [his] plea at any time prior to the Court's pronouncement of [his] sentence[.]"This led to the following exchange:

> THE COURT: Thirty ni[n]e, let's go back. You have the right to withdraw your guilty plea at any time prior to the Court pronouncing sentence. In other words, you can stop right here, we can have a jury trial or not. . . . I'm about to pronounce sentence[,] but you have the right to withdraw at any time up until that point.
> DEFENSE COUNSEL: And the question says, "Do you waive this right?"
> THE COURT: Do you waive this right.
> DEFENSE COUNSEL: I was hesitant to do that because I have, over the years, had someone all of a sudden say, nope, I want to withdraw my plea.
> THE COURT: All right. Do you waive that right so we can complete this going on right now, waive the right to withdraw your plea while we are standing here now?
> THE DEFENDANT: Yes, Your Honor.
> THE COURT: Okay. I'm going to give this back to you

[and] let you initial it.

The waiver form was returned to Appellant, and he initialed next to prompt number 39, indicating that he understood and waived his right to withdraw his plea prior to the issuance of his sentence.

In response to other questions from the court, Appellant responded affirmatively when the trial judge asked whether his "decision to plead guilty [was] made freely and voluntar[il]y[.]"Appellant also confirmed that he had reviewed the waiver form with his attorney and that he was satisfied with his attorney's representation. Appellant further confirmed that he understood the charges against him; that he had a right to a trial by jury; that, during such trial, he would have the right to cross-examine the State's witnesses and to compulsory process for securing witnesses for his defense; and that by entering his guilty plea he was waiving these rights. On the basis of Appellant's answers and his completion of the waiver form, the trial judge found that Appellant had "freely and voluntarily waived his right to a jury trial, and knowingly plea[ded] guilty." The court then accepted his

5

plea "as freely and voluntarily given." The court signed the waiver form's "Certificate of Judge," certifying that it was "satisfied that there is a factual basis to support the entry of this defendant's plea." The court concluded the hearing by sentencing Appellant in accordance with the State's recommendation to life in prison with the possibility of parole, and by informing him that he had 30 days to file a notice of appeal.

Appellant then initiated this appeal within the time provided. Appellant did not move to withdraw his plea during the plea hearing or at any time thereafter, and his appellate brief does not specify the relief he seeks.

2. Appellant claims that the trial court erred by accepting his guilty plea in two ways. First, Appellant contends that the court violated USCR 33.9 by accepting his plea without a sufficient factual basis to support his conviction. Second, Appellant argues that the trial court erred by requiring him to waive his right to withdraw his plea prior to sentencing as a condition of its acceptance of that plea. As explained further below, both claims fail.

6

(a) We begin with Appellant's claim that the trial court violated USCR 33.9 by accepting his guilty plea upon facts that were insufficient to support his conviction for felony murder.

USCR 33.9 provides that "judgment should not be entered upon [a guilty] plea without such inquiry on the record as may satisfy the judge that there is a factual basis for the plea." USCR 33.9. But, as we have explained, this rule "requires nothing more than that the trial court make itself aware of the factual basis for the plea." *Oliver v. State*, 308 Ga. 652, 654 (2020). See also *State v. Evans*, 265 Ga. 332, 334 (1995) (same). Here, the State provided the facts supporting Appellant's charges, and in accepting Appellant's plea, the trial court signed a certificate stating that it was "satisfied that there is a factual basis to support the entry of this defendant's plea." As such, the trial court satisfied the requirements of USCR 33.9. See *Oliver*, 308 Ga. at 654. And we discern no error in the trial court's determination because the facts proffered by the State were sufficient to support Appellant's plea for felony murder predicated on aggravated assault, as explained further below.

7

"A person commits the offense of murder when, in the commission of a felony, he or she causes the death of another human being irrespective of malice." OCGA § 16-5-1(c). And, as relevant here, a person is a party to a crime if he "[i]ntentionally advises, encourages, hires, counsels, or procures another to commit the crime." OCGA § 16-2-20(b)(4). Read together, a person is a party to the crime of felony murder if he intentionally advises, encourages, or procures another to commit a felony during the commission of which the person so advised, encouraged, or procured causes the death of another human being. See OCGA § 16-5-1(c); OCGA § 16-2-20(b)(4). According to the prosecutor, that is exactly what happened here.

The State represented that multiple witnesses heard Appellant tell Moore to "pop" (i.e., shoot) Frasier, which she then did. Taken as true, the prosecutor's representations show that Moore committed aggravated assault with a deadly weapon. *Howard v. State*, 288 Ga. 741, 743 (2011) ("Deliberately firing a gun in the direction of another person constitutes aggravated assault." (brackets and citation

8

omitted)); OCGA § 16-5-21(a)(2) ("A person commits the offense of aggravated assault when he or she assaults . . . [w]ith a deadly weapon[.]"); *Allen v. State*, 307 Ga. 707, 710 (2020) ("[A] firearm is a deadly weapon as a matter of law."). See also *Pop*, Merriam-Webster's Collegiate Dictionary 965 (11th ed. 2020) (defining "pop" as "to fire at: shoot"). By advising, encouraging, and procuring Moore to commit this crime, Appellant became a party to it. See OCGA § 16-2-20(b)(4). And because the prosecutor represented that Frasier later died as a result of this shooting, the State's representations were sufficient to support Appellant's guilty plea as a party to the crime of felony murder predicated on aggravated assault with a deadly weapon. Cf. *Burks v. State*, 268 Ga. 504, 504 (1997) (holding that the evidence was sufficient as a matter of constitutional due process to support the appellant's conviction for felony murder where, during a fight between the appellant and the victim, "[f]ive witnesses heard [the] appellant tell [another person] to shoot [the victim]," which the other person then did, causing the victim's death).

(b) We now turn to Appellant's argument that the trial judge improperly conditioned its acceptance of his plea upon his waiver of his right to withdraw his plea prior to sentencing. Specifically, Appellant claims that he had a statutory and constitutional right to withdraw his plea prior to sentencing; that this right was unwaivable; and that the trial court erred by "forc[ing]" him to waive this unwaivable right by conditioning its acceptance of his plea upon such a waiver. As explained below, these claims fail.

(i) First, we address Appellant's claims that he had an unwaivable statutory and constitutional right to withdraw his plea prior to sentencing.[4] These claims are mostly inaccurate: though Appellant had a statutory right to withdraw his plea prior to sentencing as he claims, he is wrong that there is a similar

[4] We note that Appellant provided no citations to the Georgia Code or to the United States or Georgia Constitutions in support of his claimed statutory and constitutional rights. The absence of a citation to either constitution is unsurprising because there is no such constitutional right, as we explain in this section. With respect to Appellant's claim of a statutory right, we understand him to be referring to OCGA § 17-7-93, based on context and on his citation to *Germany v. State*, 246 Ga. 455 (1980), which concerns a prior version of OCGA § 17-7-93, then codified as § 27-1404. We remind counsel that a failure to cite the authority on which he relies risks abandoning his claim on appeal. See Supreme Court Rule 22(1).

constitutional right or that his statutory right was unwaivable. The statutory right referenced in Appellant's brief is found in OCGA § 17-7-93(b), which provides that, "[a]t any time before judgment is pronounced, the accused person may withdraw the plea of 'guilty' and plead 'not guilty.'" OCGA § 17-7-93(b). We have explained, however, that there is no constitutional analog to this statutory provision. *Blackwell v. State*, 299 Ga. 122, 123 (2016) ("There is no Federal or State constitutional provision stating that a criminal defendant may withdraw his or her guilty plea as a matter of right at any time prior to sentence being pronounced."). And we have further explained that "[t]he right to withdraw under OCGA § 17-7-93(b) can be waived if the waiver is knowingly, voluntarily, and intelligently made." *Jordan v. State*, 310 Ga. 703, 705 (2021). Thus, Appellant's right to withdraw his plea was only statutory in nature, and it was waivable.

(ii) Next, we address Appellant's argument that the trial court improperly forced him to waive his right to withdraw his plea prior to sentencing by conditioning its acceptance of that plea on

11

Appellant's waiver. Though his appellate brief is not entirely clear, we interpret Appellant's argument as a claim that the trial court's actions rendered his waiver of his right to withdraw his plea involuntary and thus invalid. So construed, this argument also fails.

When an appellant challenges the validity of his waiver of his right to withdraw his plea prior to sentencing, "the State bears the burden of establishing that a defendant's waiver is valid." *Jordan*, 310 Ga. at 705-06. "Because a waiver [of the right to withdraw] is the intentional relinquishment or abandonment of a known right, the State may meet its burden of proving a valid waiver by pointing to record evidence showing that the defendant was advised of his right and waived it." Id. at 706 (citations and punctuation omitted).

Our review of the record shows that the trial court did not "force[ ]" Appellant to waive his right to withdraw his plea, as he claims; instead, it shows that the court properly advised Appellant of his right and he waived it. When Appellant indicated he had a question about his right to withdraw, the trial judge explained to

12

him that he had "the right to withdraw [his] guilty plea at any time prior to the Court pronouncing sentence"; that he could "stop right here," and that, rather than pleading guilty, he could "have a jury trial." The trial judge then signaled that he was "about to pronounce sentence," but nevertheless made clear that Appellant had "the right to withdraw at any time up until that point." And when the trial judge then asked appellant whether he "waive[d] that right so [they could] complete" his plea hearing, the trial judge was ensuring that Appellant understood it was his last chance to withdraw his plea, because the judge planned to pronounce Appellant's sentence immediately upon accepting that plea. Appellant then indicated his understanding of his right and his waiver thereof both verbally and in writing. When the trial judge asked whether Appellant "waive[d] [his] right" to withdraw, Appellant answered, "Yes, Your Honor." His waiver form was then returned to him, and he signed his initials next to the word "yes," below the prompt which asked whether he "underst[ood] that [he] h[ad] the absolute right to withdraw [his] plea at any time prior to the Court's pronouncement of [his]

13

sentence" and whether he "waive[d] this right."

Properly understood, the record reflects that the trial judge explained Appellant's right to withdraw to him; informed him that sentencing was imminent; and presented Appellant with the choice of whether to waive his right and proceed. And given this choice, Appellant expressly indicated that he understood this right and he waived it. We therefore hold that the State has met its burden on appeal of demonstrating that Appellant's waiver of his right to withdraw was valid and that the trial court did not err as Appellant claims. See *Blackwell*, 299 Ga. at 124-25 (holding that the appellant knowingly, voluntarily, and intelligently waived his right to withdraw where the right was explained to him during his plea hearing and the appellant verbally indicated that he understood his right and agreed to waive it).

*Judgment affirmed. All the Justices concur.*